[Civ. No. 6445. Third Appellate District.—March 28, 1941.]

WILLIS M. BASYE, Respondent, v. CRAFT'S GOLDEN STATE SHOWS (a Corporation) et al., Defendants; O. N. CRAFT, Appellant.

Elber H. Tilson, Irving E. Read, L. A. MacNicol, John J. Ford and Chester O. Hansen for Appellant.

C. Ray Robinson, F. M. Ostrander and Willard B. Treadwell for Respondent.

THOMPSON, J.—Plaintiff recovered judgment against defendants O. N. Craft and H. S. Takei and each of them, in the sum of $21,380.90, for personal injuries sustained from a deflected fragment of a bullet fired by another person in a shooting gallery, resulting in the loss of the sight of one eye. Appeals from the judgment were taken by both defendants Craft and Takei. Defendant Takei, however, failed to perfect his appeal by complying with the provisions of either section 650 or section 953a of the Code of Civil Procedure. On motion the purported appeal of Takei was dismissed by this court on May 28, 1940. Respondent's motion for diminution of the record was also granted on the last-mentioned date.

Through inadvertence, paragraph III of the findings of fact with relation to the answer of Craft erroneously read as follows: ''That the allegations of Paragraph III thereof are true.'' The inadvertent error of this finding is apparent. On motion of respondent, supported by affidavit of the trial judge, under the authority granted by Rule XIV of the Rules for the Supreme Court and District Courts of Appeal, the foregoing finding is hereby modified and changed to read as follows: ''That the allegations of Paragraph III thereof are *untrue.''* The correction of the foregoing finding of fact renders nugatory the appellant Craft's contention that the judgment should be reversed on account of the conflict in the findings. The judgment is no longer subject to attack on that account.

The appellant Craft contends no duty of care was imposed upon him by law toward the respondent under the circumstances of this case; that even though such legal duty did exist, there is no evidence of any breach thereof or that such breach was a proximate cause of respondent's injury.

We are concerned only with the question of the liability of the appellant Craft and the issues raised by him.

The accident, resulting in respondent's loss of the sight of one eye, occurred on the evening of August 20, 1938, while he was attending a carnival in the city of Atwater. The carnival was operated on premises located within the city known as ''Firemen's Park''. On the occasion of the injury,

the respondent, a dentist, 35 years of age, was accompanied by a friend, Mr. Savateer. They proceeded through the carnival grounds to the dance pavilion, where they were to be met by their wives.

As they approached the short-range shooting gallery operated by Takei it was suggested they should stop to watch a patron who was then shooting at matches. The respondent stood to the left and a foot or two behind the man who was shooting. After a shot or two had been fired, the respondent was struck in the eye by a deflected fragment from one of the bullets. Mr. Savateer, who stood near the respondent, testified as follows: "Well, the doctor, Dr. Basye, grabbed hold of his eye and something stung me on the cheek and I reached up and picked off a little piece of lead that had imbedded itself right on my cheek and the doctor had a handkerchief to his eye and I did not think he was badly hurt, I mean at that time, I did not realize it and I was more or less concerned about myself. About that time a man by the name of Charley Osborn came along and took him away, I believe under the grandstand, under the bandstand and tried to find out what had happened."

The fragment of lead which caused the injury to the doctor's eye rebounded from the steel backstop behind the target in the shooting gallery. Approximately one hour and a half after the accident, Mr. Henderson, a deputy district attorney, upon learning of the injury to respondent, went to the shooting gallery for the purpose of making an investigation. At this time, he procured from the man in charge of the gallery some .22-caliber bullets of the type which were being used, and also secured some pieces of wall-board or beaver-board which had been located between the targets and a steel backstop at the rear of the gallery.

The beaver-board was located in that position as a precaution against the danger from fragments of lead rebounding from the steel backstop to the front portion of the shooting gallery. These pieces of beaver-board were received in evidence at the trial. At that time they were in a badly perforated and disintegrated condition, caused by the firing of numerous bullets through the board. The testimony of Mr. Henderson indicates this board was then in the same condition that it was at the time he made his inspection on the evening of the accident. On cross-examination, in re-

sponse to the question as to why he had taken the board from the gallery, Mr. Henderson testified: ''Because I had learned that an injury had been received by Mr. Basye from a bullet bouncing out from there and *I considered the range and condition it then was in, was a nuisance and there was danger of injury there to life.*''

It is the contention of appellant that the duty of due care owed to respondent was upon Atwater Volunteer Firemen, Inc., and that he, appellant, cannot be held liable for the injuries caused by the negligence of Takei, who was an independent concessionaire.

To determine the question of legal liability for the injury received by the respondent, it is necessary to determine the contractual relationship which existed between Atwater Volunteer Firemen, Inc., O. N. Craft and H. S. Takei.

In May, 1938, Craft's Golden State Shows, as the party of the first part, entered into an agreement with Atwater Volunteer Firemen, Inc., as party of the second part. It was agreed that the party of the first part should bring Craft's Golden State Shows to the city of Atwater for a period of five days and nights, commencing August 17 and ending August 21, 1938, inclusive, to be operated under the auspices of Atwater Volunteer Firemen, Inc. The appellant agreed to furnish twenty attractions to be located at Firemen's Park, in Atwater, which was fulfilled. Firemen's Park was owned by Atwater Volunteer Firemen, Inc. The agreement provided that Craft's Golden State Shows should have ''exclusive control of all shows, riding devices *and concessions.* Settlement shall be made at the close of each day's business. Except second party to have beer and soft drinks and eats at location near dance hall.''

For the privilege of operating their attractions at Firemen's Park, Mr. Craft agreed to pay a percentage of the gross receipts to Atwater Volunteer Firemen, Inc., as follows: ''10% percentage of all shows; 15% percentage of all riding devices, (except the Octopus and Scooter Rides) which shall be 12% percentage. All concessions not classed as paid attractions, first party agrees to pay second party the sum of Five ($5.00) Dollars for each concession that operates during the life of this contract.'' The short-range shooting gallery which was operated by Takei came within this latter classification from which Atwater Volunteer Firemen, Inc., was paid

by appellant the sum of $5 for the operation of the gallery in conjunction with the other attractions.

Mr. Takei first operated his shooting gallery in conjunction with Craft's Golden State Shows in 1936. The evidence discloses the fact that such operation was always carried on in the capacity of an independent concession. Takei owned all of the apparatus connected with the shooting gallery, as well as the means of transporting the equipment. During the period of operation in conjunction with appellant's show, Takei sometimes failed to accompany the attractions to their locations. His relationship to the appellant was that of an independent contractor.

In November, 1937, Takei entered into an agreement with the appellant, which provided that he should operate his concession, consisting of "3 bottle games, 1 short range [shooting gallery], 1 cigarette range and 1 string game", in conjunction with and on the same premises occupied by the appellant's shows in the various cities of the State of California. The agreement provided that appellant was to furnish Takei with a location in the various cities, police protection, electric current for lights, and with necessary licenses. It was further agreed that Takei was to "hold first party harmless against any and all claims arising from any source whatever and to indemnify first party against all loss, damage and/or liability that might result from the erection, maintenance, operation, and dismantling of said sideshow or concession, . . . " This written agreement provided for payment by Takei to the appellant Craft of a percentage of the daily net receipts of his enterprise. It appears, however, payments were not made in that manner. The evidence discloses the fact to be that Takei actually paid the appellant $30 per week for the privilege of operating his concession in conjunction with Craft's Golden State Shows.

No employees of the appellant exercised supervision over the manner of conducting or operating this concession. Takei had full control in this regard. The shooting gallery was not inspected by the appellant nor by his employees. Evidence was introduced at the trial, indicating that Mr. Takei sold his shooting gallery and equipment the day prior to respondent's injury. That circumstance, however, has no bearing on the issues presented on this appeal.

Atwater Volunteer Firemen, Inc., advertised the carnival by placing a banner across one of the streets in Atwater upon which there appeared the name of the Firemen's association in connection with this advertisement. The general admission fee to the carnival grounds was collected and retained by Atwater Volunteer Firemen, Inc. The Firemen's association also controlled and operated in the enclosure a '49 Camp, a dance hall and a soft-drink and eating concession. The appellant received no portion of the gate receipts and no share of the receipts from the dance hall or the food and drinks counter. All of the other concessions and attractions, including some twenty in number, with the exception of the short-range shooting gallery and one or two others, were owned and operated by Craft's Golden State Shows. One or two other independent concessions were operated on contract with the appellant in the same manner as that of Mr. Takei. All of the carnival concessions on the grounds were advertised by the appellant. His banners read: "Craft's Golden State Shows". It does not appear from the evidence that Mr. Takei, or any of the other independent concessionaries, advertised their attractions independently of the Craft's Golden State Shows. Appellant does not contend his attractions were advertised independently. There were no separate banners advertising the short-range shooting gallery as a concession, independently of Craft's Golden State Shows; nor does it appear that the independent concessions were located in such a manner as to designate them as separate and distinct from the other attractions belonging to appellant.

The law is well settled that a proprietor, or one who operates a place of amusement, owes a legal duty to exercise due care to protect from injury individuals who come upon his premises by his express or implied invitation. He must see that such premises are in a reasonably safe condition. It constitutes a breach of this duty for him to fail to exercise reasonably careful supervision of the appliances or methods of operating concessions under his management. The proprietor or operator of such a place of amusement is liable to an invited member of the public for injuries received as the result of negligence on the part of an independent contractor or concessionaire when it is shown that the failure to exercise such supervision proximately results in injuries to a patron. The duty of exercising care, and

the responsibility for the negligence of independent concessionairies, are extended by law to the owner, the occupier or the one in possession of the premises on which the amusement is being operated. (*Szasz* v. *Joyland Co.,* 84 Cal. App. 259 [257 Pac. 871]; *Johnstone* v. *Panama Pac. I. E. Co.,* 187 Cal. 323 [202 Pac. 34]; *Harvey* v. *Machtig,* 73 Cal. App. 667 [139 Pac. 78]; *Whyte* v. *Idora Park Co.,* 29 Cal. App. 342 [155 Pac. 1018].)

In the case of *Szasz* v. *Joyland Co., supra,* the amusement grounds were owned and operated by the defendant. A number of the concessions had been leased to independent operators. One of the leased concessions was operated as a shooting gallery. The injury to plaintiff, necessitating the removal of one of his eyes, was received under precisely the same circumstances which existed in the present case. The plaintiff, a young boy, was standing behind the patron who was shooting at targets in the gallery. A fragment from one of the bullets rebounded and struck him in the eye. The owner and controller of the amusement grounds was held to be liable. The court described the accident and gave the reason for concluding that the owner of the grounds was liable for negligence. The opinion, on page 263, says in that regard:

"Of course, the path of the bullet was not discernible to the eye of any witness, but the whole situation was such as reasonably to establish the probable manner in which the accident occurred. . . . A bullet glancing against any one of these rods or bars might readily fly off in such an oblique direction as to strike the rear iron wall at a very acute angle and be deflected thence at a similar angle to one of the iron side walls or to one of the bars or rods in the rack, glancing thence towards the place from which it was fired. The number of courses which such a ricocheting bullet might take through the network of iron rods and bars and against the iron background is infinite. The bullet would probably be broken into fragments which would fly out in different directions. It cannot be held that the evidence does not warrant a finding that the defendant should have anticipated the happening of such an accident and that it was negligent in maintaining the arrangement described. Since it is a justifiable inference that such arrangement was dangerous and that the danger arising therefrom ought to have been

anticipated, mere proof that no such accident ever occurred before does not require a finding in favor of defendant.''

In the case of *Whyte* v. *Idora Park Co., supra,* a judgment was sustained against the corporation conducting an amusement park, for injuries received by a patron in a concession installed and operated by private parties. The injury was caused by the negligent construction of a slideway which plaintiff was required to use as a means of exit from a building. The defendant in that case reserved the right to object to any employee of the concessionaire ''who was not conducting the business in a proper way''. Otherwise employees were under the exclusive control and direction of the concessionaire. The agreement provided that the corporation was to receive a percentage of the gross admission fees received by each particular concession. In holding that the owner of the amusement park was guilty of negligence, the court cites with approval the language used in the case of *Thornton* v. *Maine State Agricultural Society,* 97 Me. 108 [53 Atl. 979, 94 Am. St. Rep. 488], in which it was said:

''It is held that an association conducting a fair is liable for injury through a defect in apparatus employed by a concessioner for the amusement of patrons when it receives a portion of the sums paid for the use of the apparatus, has general charge of the grounds, and takes an active part in advertising the amusements.''

The court further quotes with approval, at page 345, from this last-cited case as follows:

'' 'Some of these cases cited are those where the injuries resulted from the negligence of the independent contractors and not lessees. But we can perceive no tenable distinction in a case like this. In either case the offending thing is where it is by the license and permission of the owners of the premises, and upon ground which the owners, by virtue of their invitation to the public, hold out as safe. This is the ground of their liability. By inviting patrons to their fair, they make themselves bound to use reasonable care to see that the fair in all its parts is safe, and is conducted safely, whether the various parts of the fair are conducted and managed by the owners themselves, or, with their permission, by licensees, independent contractors, or lessees. Such is the conclusion which rests upon good sense, and

which seems to be clearly established by all the authorities upon the subject.' "

The principle of law announced in the foregoing cases is approved in Restatement of the Law of Torts, section 344, pages 944, 945, as follows:

"A possessor of land who holds it open to the entry of the public for his business purposes is subject to liability to members of the public entering for such purposes for bodily harm caused to them by his failure to exercise a reasonably careful supervision of the appliances or methods of an independent contractor or concessionaire whom he has employed or permitted to carry on upon the land an activity which is directly or indirectly connected with his business use thereof.

"a. A possessor of land is subject to liability, under the rule stated in this Section, only towards those who come upon the land as his patrons, that is, who are invited or permitted to come thereon for the purposes for which it is held open to the public. Thus, a possessor of land who utilizes it as a public fair grounds is subject to liability to all persons invited or permitted to come on the fair grounds to witness the fair. *If the possessor invites or permits another to enter for the purpose for which the land is held open to the public, it is immaterial whether the other pays for his admission or receives the privilege of entry as a gratuity from the possessor.*"

It follows from the foregoing authorities that the appellant in this case owed a duty toward the invited public to maintain a reasonable inspection of the shooting gallery to see that its appliances and method of operation were reasonably safe, and his failure to do so rendered him liable for the injury received by the plaintiff, under the circumstances of this case. A reasonable and timely inspection of the appliances of the shooting gallery should have disclosed the defective condition of the perforated beaver-board. That liability on the part of appellant would exist under the facts of this case, even though Atwater Volunteer Firemen, Inc., might also be similarly liable for failure to perform its duty in that regard. The joint liability of the co-defendant, Takei, does not relieve the appellant of his negligence.

■ By virtue of the agreement between appellant and Atwater Volunteer Firemen, Inc., appellant went into pos-

session of a portion of Firemen's Park as a lessee and operator of a place of amusement. The gross receipt percentages paid to Atwater Volunteer Firemen, Inc., constituted rental payments. The fact that the Atwater Firemen reserved the right to operate and control a '49 Camp, a dance hall and an eating establishment is not inconsistent with the conclusion that appellant was a lessee of the remainder of the premises for the purpose of operating his concessions and attractions for profit. The appellant placed himself in the position of a possessor of land who holds it open to the public for the benefit of his business. The evidence shows that these portions of the grounds were advertised as ''Craft's Golden State Shows'' by means of banners owned and displayed by appellant; nor does the fact that the Atwater Volunteer Firemen, Inc., collected general admission fees from the members of the visiting public affect the relationship as between appellant and those patrons. The appellant received $30 weekly from Takei for the privilege of operating the shooting gallery.

It is the contention of appellant that the proper construction of the written agreements between himself, the Atwater Volunteer Firemen, Inc., and Takei required the court to conclude that Takei was a lessee of the Atwater Volunteer Firemen, Inc., and an independent concessionaire by virtue of an implied agreement with the Firemen's association. With this contention we cannot agree. The written contract between the appellant and the Atwater Volunteer Firemen, Inc., provides in part: ''First party [appellant] is to have exclusive control of all shows, riding devices and concessions. Settlement shall be made at the close of each day's business. Except second party [Atwater Firemen] to have beer and soft drinks and eats at location near dance hall.'' This clause gives the exclusive control of *all* shows, riding devices *and concessions*. The Atwater Volunteer Firemen, Inc., were not given control over Takei's shooting gallery. There is no evidence that the Firemen's association had knowledge of the agreement between the appellant and Takei.

The cases cited by the appellant, which state the general rule of law regarding the liability of a landlord for the negligence of his tenant are not applicable. A landlord is ordinarily under no duty to inspect or maintain the premises in possession of his lessee. No case cited by appellant is

in conflict with the law as we apply it to the circumstances existing in the present case.

The trial court found that the injuries suffered by respondent were a direct and proximate result of the negligence of appellants O. N. Craft and H. S. Takei. We believe there is substantial evidence to support that finding.

There is evidence that the breach of duty on the part of appellant was a proximate cause of respondent's injuries. Respondent introduced in evidence the badly perforated and disintegrated beaver-board, heretofore referred to, for the purpose of proving the immediate cause of his injury. It was the theory of respondent that the condition of the beaver-board permitted fragments of lead to ricochet or fly back toward the front part of the shooting gallery. In support of this theory as to the immediate cause of the injury, numerous fragments of bullets were found to be lodged in the beaver-board which was introduced in evidence.

The findings of the court imply that the beaver-board, which was intended to prevent particles of shattered bullets from flying about the gallery, was in such a perforated and damaged condition at the time of the accident as to endanger the safety of the patrons of the gallery. It was the province of the trial judge to determine whether the beaver-board, which was offered in evidence, was in substantially the same dangerous condition when it was delivered to the officer, Henderson, about an hour and a half after the accident occurred and when it was received in evidence as it was at the time of the accident. We are of the opinion the court did not err in receiving the beaver-board in evidence. Henderson, who was a witness at the trial, examined the exhibit. He testified that he had heard of the accident almost immediately after it occurred, and that he went to the gallery and procured the beaver-board because he believed the equipment of the gallery rendered it dangerous to patrons. The court also observed the perforated and damaged condition of the board. It was self-evident that the condition of that board could not have been materially changed within the short period of time which elapsed from the time of the accident until it was delivered to the witness. There was no direct statement that it was in the same condition, but it sufficiently appeared that it must have been in substantially

the same condition. The receiving of that beaver-board in evidence does not constitute reversible error.

■ Error, if any, which may have occurred in permitting a witness to testify from memory to the language contained in certain advertising bulletins which were displayed in Firemen's Park was cured by the subsequent introduction in evidence of those identical advertising banners.

· We are satisfied the record adequately shows that the appellant owed a duty to the patrons of the shooting gallery to see that the equipment was maintained in such a reasonably safe condition as not to endanger them from flying particles of bullets, and that he was guilty of negligence in that regard which renders him liable for the injury which was sustained by the plaintiff. The findings and judgment are sufficiently supported by the evidence.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1941.