[L. A. No. 22142. In Bank. Aug. 12, 1952.]

MAX KNELL et al., Appellants, v. RAY MORRIS et al., Respondents.

Victor Ford Collins and Arnold M. Cannan for Appellants.

DeForrest Home, Eugene Kelly, Desser, Rau, Christensen & Hoffman and William Christensen for Respondents.

GIBSON, C. J.—Plaintiffs' property was injured by water which leaked from a defective heater. They brought this action for damages against Morris, the owner of a plumbing business, who had installed the heater on premises leased by MacMar, Inc., and whose employee, Rule, worked on the heater shortly before the accident. Plaintiffs also sued Mac-Mar, Inc., a corporation which owned the heater; Dan Spellman, its secretary and treasurer; and Mack E. Marin, who was associated with the corporation. A judgment of nonsuit

was granted in favor of all defendants, and plaintiffs appealed.

In accordance with the settled rule, the facts will be stated most favorably to plaintiffs, and all reasonable inferences will be drawn in their behalf. MacMar, Inc., occupied the floor immediately above plaintiffs' luggage store, and the heater, described as a nine section, cast-iron, gas-fired water heater, was originally purchased about one year before the accident. In the late afternoon of April 28, 1948, Spellman heard the heater making a hissing noise, and, upon investigating, found that it was leaking. It does not appear that this leak caused any damage to plaintiffs' property. Spellman immediately turned off the water and notified Morris, who sent his employee, Rule, a master plumber, to repair it. Rule found a "pinhole" leak in the second section and used a radiator compound for the purpose of sealing the opening. Morris testified that this preparation is used by placing it in the water in the heater and boiling the solution for a number of minutes, and that as it circulates through the heater "it seals up the openings whatever the cause may be." After using the compound Rule put the heater in operation and left the premises. At about 7 o'clock the following morning, it was found that water from the heater had caused the ceilings in plaintiffs' store to fall and had damaged the floor coverings and merchandise. Examination of the heater revealed that sections three, four and five contained several cracks which were about the thickness of a cigarette paper and ranged in length from one to four inches.

### Liability of Morris

There is no evidence of any specific act of negligence on the part of Morris, and the question is whether the facts entitle plaintiffs to the benefit of the doctrine of res ipsa loquitur. This doctrine may be invoked where the accident is of such a nature that it can be said, in the light of past experience, that it was probably the result of someone's negligence and that the defendant is probably the responsible party. (*Zentz v. Coca Cola Bottling Co., ante,* p. 436 [247 P.2d 344].) As pointed out in the Zentz case, the courts, in determining applicability of the doctrine, have relied upon common knowledge as well as expert testimony, and they have considered such circumstances as the extent of control which the defendant exercised over the instrumentality causing the accident, the plaintiff's own conduct, the likelihood of negli-

gence by a third person, and, in some situations, the fact that the defendant may be better able than the plaintiff to explain what happened.

It is clear that in the present case the accident probably would not have occurred unless someone was negligent, and the question is whether the evidence is sufficient to justify application of res ipsa loquitur as to Morris. The evidence shows that the boiler compound, if properly applied, would seal up small holes and cracks, and that there thus was available a safe and effective method of repairing the leak. In view of the fact that additional leaks developed within a short time after Rule put the heater in operation, it is probable that he either failed to use the compound properly, so that it did not seal all the cracks then existing, or carelessly did his work in such a manner as to induce cracks in the heater where none had existed before. This might have been done, for example, by lighting the gas with insufficient water in the heater or by suddenly running cold water into the heater after it had been brought to a high temperature. It should be noted in this connection that the cracks developed in three of the nine separate sections of a comparatively new heater and that these openings were of a different character from the ''pinhole'' which the plumber found when he was called in to repair the leak.

Furthermore, Rule was under an affirmative obligation to make appropriate tests when he put the heater back into operation, and one obvious method would have been to observe, for a reasonable time, whether any leaks developed after the water became fully heated. Although this method might not reveal every type of defect in the heater, it is likely that it would have disclosed cracks such as those which were apparent the next morning, whether they resulted from an act of the plumber or from a defect in the heater. The amount of water present and the amount of damage done indicate that the heater must have been leaking for some time before 7 o'clock in the morning when the damage was discovered. The heater was constructed so that the flame of the gas burner would be extinguished when the water reached a certain temperature, and, although Morris testified that Rule said he stayed until this occurred, due care may have required him to stay longer. Moreover, the trier of fact was not compelled to believe Morris' hearsay testimony and could have inferred that Rule did not test the heater in this manner but, instead, left the premises immediately after he put it in op-

eration, without waiting until the water became hot and perhaps even without waiting until the heater became filled with water.

Although it is, of course, possible that the damage was caused by something not attributable to Morris, we do not believe that this is an equally probable explanation for the accident. The heater was rendered harmless when the water was turned off by Spellman, and the leakage which caused the damage occurred after the heater was again placed in operation by Rule. It could be reasonably inferred from the facts proved that no one touched the heater, which operated automatically, after it was repaired and before the accident occurred. ■ Morris argues that the leakage causing the damage may have been due to cracks which developed after the heater was repaired and that they may have resulted from defects in manufacture which were not discoverable upon reasonable inspection. This possibility, however, would appear to be very remote, and in our opinion is not sufficient to prevent the application of the doctrine of res ipsa loquitur as against Morris.

■ The next question is whether Morris owed any duty of care with respect to plaintiffs, the violation of which would result in liability to them. Morris testified that Rule was his employee, and there is evidence which would support a finding that Morris was acting as an independent contractor. He would, of course, be liable to MacMar for any negligence of his employee, Rule. It has been suggested, however, that if Morris was an independent contractor and the work was completed by him and accepted by MacMar, he would be under no duty to plaintiffs. (See *Hale* v. *Depaoli,* 33 Cal. 2d 228, 230 et seq. [201 P.2d 1, 13 A.L.R.2d 183] ; *Johnston* v. *Long,* 56 Cal.App.2d 834, 837 [133 P.2d 409].) Even if it be assumed that such facts would relieve Morris of liability to plaintiffs, there is no evidence that the work was accepted by MacMar, Inc., and the record does not compel the conclusion that the work was completed when Rule put the heater in operation. The court therefore erred in granting a motion for nonsuit as to Morris.

### Liability of MacMar, Inc.

■ Inasmuch as the evidence is sufficient to support a finding that Morris was negligent, it was error to grant a nonsuit as to MacMar, Inc. The fact that Morris was acting in the capacity of an independent contractor does not neces-

sarily absolve the corporation from liability. The general rule of nonliability of an employer for the acts of an independent contractor is subject to numerous exceptions. (See *Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256 [143 P.2d 929]; *McCordic* v. *Crawford,* 23 Cal.2d 1 [142 P.2d 7]; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594 [110 P.2d 1044]; *Snow* v. *Marian Realty Co.,* 212 Cal. 622 [299 P. 720]; *Luce* v. *Holloway,* 156 Cal. 162 [103 P. 886]; Rest., Torts, §§ 410-429; Prosser on Torts [1941] p. 486 et seq.; Harper on Torts [1933] p. 645 et seq.; 23 A.L.R. 984.) There is evidence in the present case which is sufficient to support a finding in favor of plaintiffs under at least one of these exceptions, and it is unnecessary for us to consider whether MacMar may be liable under any other theory.

It is well settled that the possessor of land is answerable for the negligent failure of an independent contractor to put or maintain buildings and structures thereon in reasonably safe condition. (See Rest., Torts, § 422.) This principle was recently applied in *Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256 [143 P.2d 929], to hold the owner of premises liable for the defective condition of an elevator. MacMar, Inc., points out that the Pepperdine rule is limited to maintenance of buildings, structures or things which are an integral part thereof, and it contends that the water heater is merely personalty. Whether a water heater is realty or personalty is, of course, a question of fact (see *M. P. Moller, Inc.* v. *Wilson,* 8 Cal.2d 31, 38 [63 P.2d 818]; 22 Am.Jur. 772-773), and various factors must be considered, such as the manner of its annexation, its adaptability to the purpose for which the realty is used, and the intention of the party making the annexation. (See *Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 309 [217 P.2d 936].) As to innocent third parties, the intent which controls is that which is reasonably manifested by physical facts and outward appearances, rather than any express or implied intent of those making the annexation. (See *Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 309 [217 P.2d 936]; *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 397 [175 P.2d 512]; *M. P. Moller, Inc.* v. *Wilson,* 8 Cal.2d 31, 37-38 [63 P.2d 818]; *People* v. *Church,* 57 Cal.App.2dSupp. 1032, 1048 [136 P.2d 139].) In the present case it can reasonably be inferred that the heater was attached to the building by means of gas and water pipes, and the evidence, although meager, is sufficient to permit a finding that the heater

was permanently affixed to the realty and was adapted to the purpose for which the premises were used. (*Cf. Broadway Imp. & Inv. Co.* v. *Tumansky,* 2 Cal.2d 465, 468-469 [41 P.2d 553].) If the jury should find that the heater was a fixture, MacMar, Inc., would be charged with a nondelegable duty of care with respect to its maintenance under the rule of the Pepperdine case.

### Liability of Spellman and Marin

Plaintiffs concede that a nonsuit was properly granted as to Marin, and we can find no evidence which would support a finding of negligence on the part of Spellman. When Spellman discovered the "pinhole" leak, he immediately rendered the heater harmless by turning off the water and called Morris to make the repairs. There is nothing to show that he had anything to do with the heater or any knowledge of anything that occurred thereafter before the discovery of the damage on the following morning. Spellman, of course, could not be held responsible for the negligence of Morris.

As to defendants Marin and Spellman, the judgment is affirmed, and as to defendants Morris and MacMar, Inc., the judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.