[L. A. No. 23566. In Bank. July 1, 1955.]

VERNON LEROY SNYDER, Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Respondent.

[L. A. No. 23567. In Bank. July 1, 1955.]

STEVE JAMES GRADICH, Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Respondent.

Alex D. Fred, Edward Feldman and Bodle & Landye for Appellants.

Crider, Tilson & Ruppe and E. Spurgeon Rothrock for Respondent.

CARTER, J.—Plaintiffs, Snyder and Gradich, appeal from judgments entered upon verdicts by a jury for defendant, Southern California Edison Company, in consolidated actions, to recover damages for personal injuries alleged to have been caused by defendant's negligence.

Defendant is a public utility engaged in the manufacture, sale and distribution of electricity to the public. It entered into a contract with the J. W. Wilson Company under which that company as independent contractor was to repair and construct power lines for defendant on its premises along Latigo road and agreed to comply with all the rules and regulations of the Public Utilities Commission and all the laws pertaining to public utilities in carrying out the contract and to be liable for failure to do so. About 99 per cent of Wilson Company's work was for defendant. Wilson furnished the men and equipment, and defendant the material such as poles. In connection with the work defendant employed an inspector whose duty it was to see that the work complied with the contract and specifications.

In the instant case Wilson was engaged, under the contract, in the Santa Monica Mountains in installing a new feeder power line and replacing deteriorated poles in a 16,000-volt line. Plaintiffs were two of its employees on that project.

While plaintiffs, as linemen, were installing switches at the top of a wire-supporting pole on the feeder line which had been installed earlier that day, the pole began to lean toward the 16,000-volt line. The workmen below endeavored successfully to prevent its contact with the 16,000-volt line but the pole fell to the ground injuring plaintiffs. The 50-foot pole had been installed by Wilson under its contract. The upper part of the soil at the point of installation was loose shale. The pole was less than 6½ feet in the ground. Rule 49.1C of General Order No. 95 of the Public Utilities Commission requires that 50-foot poles be placed in firm soil at a minimum depth of 6½ feet and that "deeper settings or special methods of pole setting . . . be resorted to" where the soil is not firm. Defendant's inspector was on the job in the general area but was not near the pole in question. The record shows that it was not his policy to examine the pole setting depths. In adopting Order 95 the commission stated: "Rules of the character here before the Commission, for modification and revision, find a wide application in public utility operation and service. In these respects, the rules not only provide a standard of safety, *both to the workman* and to the public, but likewise materially contribute to the standard of service rendered and also afford a means of coordination between different types of lines, such as power and communication." (Emphasis added; 43 C.R.C. 872, 874.) Rule 95

itself provides that the purpose of the rules ". . . is to formulate . . . uniform requirements for overhead line construction, the application of which will . . . *secure safety to persons engaged in the construction,* maintenance, operation, or use of overhead electrical lines and to the public in general." (Emphasis added.)

The public utilities law* provides: "Every public utility shall obey and comply with every order, decision, direction, or rule made or prescribed by the commission in the matters specified in this part, or any other matter in any way relating to or affecting its business as a public utility, and shall do everything necessary or proper to secure compliance therewith by all of its officers, agents, and employees." (Pub. Util. Code, § 702; formerly Public Utilities Act, Stats. 1915, p. 115, § 30.) "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt." (Pub. Util. Code, § 2106; formerly Public Utilities Act, *supra*, § 73.) "Any public utility which violates or fails to comply with any provision of the Constitution of this State or of this part, or which fails or neglects to comply with any part or provision of any order, decision, decree, rule, direction, demand, or requirement of the commission, in a case in which a penalty has not otherwise been provided, is subject to a penalty of not less than five hundred dollars ($500) nor more than two thousand dollars ($2,000) for each offense." (Pub. Util. Code, § 2107; formerly Public Utilities Act, *supra*, § 76.) "Every officer, agent, or employee of any public utility, who violates or fails to comply

---

*We refer to that law as appearing in the Public Utilities Code although at the time here involved that code had not been adopted but the prior statute was the same.

with, or who procures, aids, or abets any violation by any public utility of any provision of the Constitution of this State or of this part, or who fails to comply with any part of any order, decision, rule, direction, demand, or requirement of the commission, or who procures, aids, or abets any public utility in such violation or non-compliance in a case in which a penalty has not otherwise been provided for such officer, agent, or employee, is guilty of a misdemeanor and is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment.'' (Pub. Util. Code, § 2110; formerly Public Utilities Act, *supra*, § 77.)

The jury was instructed at defendant's request that rule 49.1C of Order 95 and sections 702 and 2106 of the Public Utilities Code contained the provisions heretofore set forth but was also instructed that if the pole was set in violation of the rule by Wilson, an independent contractor, and if defendant did not instruct or order Wilson to so set it defendant was not negligent. Plaintiffs' requested instructions that if the rule was violated defendant would be negligent, as its duty under the rule and statute could not be delegated to an independent contractor, were refused. The main question presented, therefore, is whether the duty imposed upon defendant by the statute and commission could be delegated to an independent contractor so as to insulate defendant from liability because of the failure of the contractor to perform the duties.

This court recently stated: ''The general rule of non-liability of an employer for the acts of an independent contractor is subject to numerous exceptions. (See *Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256 [143 P.2d 929]; *McCordic* v. *Crawford*, 23 Cal.2d 1 [142 P.2d 7]; *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594 [110 P.2d 1044]; *Snow* v. *Marian Realty Co.*, 212 Cal. 622 [299 P. 720]; *Luce* v. *Holloway*, 156 Cal. 162 [103 P. 886]; Rest., Torts, §§ 410-429; Prosser on Torts [1941] p. 486 et seq.; Harper on Torts [1933] p. 645 et seq.; 23 A.L.R. 984.) . . .

▮ ''It is well settled that the possessor of land is answerable for the negligent failure of an independent contractor to put or maintain buildings and structures thereon in reasonably safe condition. (See Rest., Torts, § 42.)'' (*Knell* v. *Morris*, 39 Cal.2d 450, 456 [247 P.2d 352].) The rule was specifically applied to the operation by a highway common carrier, a public utility, of some of its trucks through

an independent contractor. The court stated: "Plaintiffs, on the other hand, contend that under both the common law and certain regulations of the Public Utilities Commission, C.M.T., as a highway common carrier, could not delegate its duties to an independent contractor so as to escape liability for their negligent performance.

"The common law principle upon which plaintiffs rely has been enunciated in section 428 of the Restatement of Torts,* and has frequently been applied to impose liability upon franchised common carriers who have engaged independent contractors to transport goods over the public highways. . . .

"C.M.T., operating as a highway common carrier, is engaged in a 'business attended with very considerable risk' . . . and the Legislature has subjected it and similar carriers to the full regulatory power of the Public Utilities Commission to protect the safety of the general public. . . . The effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control. If by the same device it could escape liability for the negligent conduct of its contractors, not only would the incentive for careful supervision of its business be reduced, but members of the public who are injured would be deprived of the financial responsibility of those who had been granted the privilege of conducting their business over the public highways. Accordingly, both to protect the public from financially irresponsible contractors and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable." (*Eli* v. *Murphy,* 39 Cal.2d 598, 599-600 [248 P.2d 756].) The rule of nondelegable duty has been applied to the maintenance of premises by a landlord through an independent contractor with respect to his tenants or their employees (*Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256 [143 P.2d 929]; *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409 [218 P.2d 17]; to the owner of an amusement concession operated by an independent contractor when a patron was injured (*McCordic* v. *Crawford,* 23 Cal.2d 1 [142 P.2d 7]; *Basye* v. *Craft's Golden State Shows,* 43 Cal.App.2d 782 [111 P.2d 746); to the owner of property who, through an independent contractor, so repaired part of the premises as to cause damage to the one

---

*" 'An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.' "

occupying the floor below (*Knell* v. *Morris, supra,* 39 Cal.2d 450). ■ Where an activity involving possible danger to the public is carried on under public franchise or authority the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority (*Eli* v. *Murphy, supra,* 39 Cal.2d 598; *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594 [110 P.2d 1044]; *Snow* v. *Marian Realty Co.,* 212 Cal. 622 [299 P. 720]; *Luce* v. *Holloway,* 156 Cal. 162 [103 P. 886]; *Colgrove* v. *Smith,* 102 Cal. 220 [36 P. 411, 27 L.R.A. 590]; *Spence* v. *Schultz,* 103 Cal. 208 [37 P. 220]; *Lehman* v. *Robertson Truck-A-Way,* 122 Cal.App.2d 82 [264 P.2d 653]; *Smith* v. *San Joaquin etc. Power Corp.,* 59 Cal.App. 647 [211 P. 843]; *Kirk* v. *Santa Barbara Ice Co.,* 157 Cal. 591 [108 P. 509]; *Barrabee* v. *Crescenta Mut. Water Co.,* 88 Cal.App.2d 192 [198 P.2d 558]; *Gilbert* v. *Rogers,* 117 Cal.App.2d 712 [256 P.2d 574]) and generally speaking there are many situations in which the person cannot absolve himself from liability by delegating his duties to an independent contractor. (27 Am.Jur., Independent Contractors, §§ 48-50; 23 A.L.R. 985; 29 id. 736; 20 A.L.R.2d 868; Rest., Torts, §§ 410-429; Prosser on Torts, p. 486 et seq.; Harper, Law of Torts (1933), § 292.) The matter is discussed by Harper, as follows: ". . . one who employs an independent contractor is, as a general rule, not liable for the misconduct of the latter or of his servants while acting within the scope of the contract. The idea responsible for this general rule of nonliability is the want of control and authority of the employer over the work, and the consequent apparent harshness of a rule which would hold one responsible for the manner of conducting an enterprise over which he wants the authority to direct the operations. Again so far as the activity immediately causing the injury is concerned, it is the contractor rather than the contractee who is the entrepreneur and who should ordinarily carry the risk. . . .

"[There are] certain exceptions and apparent exceptions which, with increasing tendency, seem likely to overshadow in importance and scope the rule itself. . . . A number of situations exist, however, which are actual cases of vicarious liability, that is, liability for the misconduct of the independent contractor and his servants although the contractee has himself been free from personal fault. A number of factors concur to constitute the grounds of policy for such allocation

of risk from the immediate to the general entrepreneur. These considerations, in fact, constitute such a powerful argument for the liability of the employer of an independent contractor that it would seem highly desirable for the courts to adopt the rule of liability and confine nonliability to a few exceptional cases. This, the American courts, at least, have not yet done, but there is every reason to believe that sound social policy will induce the courts to make further inroads upon the rule of nonliability in this class of cases.

"The first genuine case of liability for misconduct of an independent contractor or his employees is the case of the socalled 'nondelegable' duty. Where the law imposes a definite, affirmative duty upon one by reason of his relationship with others, whether as an owner or proprietor of land or chattels or in some other capacity, such persons can not escape liability for a failure to perform the duty thus imposed by entrusting it to an independent contractor. . . . It is immaterial whether the duty thus regarded as 'nondelegable' be imposed by statute, charter or by common law. Thus where a railroad company was required by statute to construct fences along its right of way and it employed a contractor to construct the fences, the company was liable for the loss of a cow killed by reason of the contractor's failure to build the fences as required by the statute. The same rule applies to the duty imposed upon railroads to erect gates at crossings, to construct cattle guards, and to maintain crossings in good condition. So, too, the owner of land is liable for the failure of an independent contractor to perform affirmative duties toward invitees and others to whom the occupier is bound to keep his premises in a reasonably safe condition. . . .

"Another large group of cases predicate liability on the part of the employer of an independent contractor for the misconduct of the latter in the performance of certain 'intrinsically dangerous' work. The policy of allocating to the general entrepreneur the risks incident to his activity is obvious when the activity carries with it extraordinary hazards to third persons. . . . [T]he principle may be generalized that one who employs an independent contractor to perform work which is either extra-hazardous unless special precautions are taken or which is inherently dangerous in any event is liable for negligence on the part of the independent contractor or his servants in the improper performance of the work or for their negligent failure to take the

necessary precautions. This broad principle has been applied not only to excavations on private property, but on the public highway as well, to blasting operations, to the construction of a dam, to the use of fire in clearing land, to the demolition of walls and old buildings, and to several other types of intrinsically dangerous enterprises.

"In both of the above types of situation in which the employer of an independent contractor is liable for the negligence of the contractor or his servants, there is the limitation that such liability extends only to negligence in the failing to take the necessary precautions, failing to adopt a reasonably safe method, or in failing to produce a result which it is the duty of the employer—contractee to have attained. Such liability does not ordinarily extend to socalled 'collateral' or 'casual' negligence on the part of the contractor or his servants in the performance of the operative detail of the work. The negligence for which the employer is liable, as general entrepreneur, must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature. Negligence in the doing of ordinary acts, not necessarily incidental, but only accidentally connected with the work, do not fall within the policy of the law which imposes the extraordinary liability upon the employer.

"The distinction between 'collateral' or 'casual' negligence and negligence of the contractor so intimately connected with the work to be done that the employer-contractee is liable therefor is a shadowy one at best." (Harper, Law of Torts (1933), § 292.)

■ Contrary to defendant's contention the statutes and rules of the commission do impose a direct and positive duty on the operator of a utility. This is evident from the regulations heretofore quoted. The rules were promulgated for the safety of workmen as well as the public, and civil penalties are imposed on the utility for failure to comply with them and criminal penalties are imposed on the officers and employees of the utility. ■ Utilities may not operate except by permission of the commission which imposes the duties heretofore set forth together with other regulations pertinent to the operation of such organizations.

■ Utility companies, either electric, telephone or telegraph, are responsible for nearly all pole installations. In the law relating to such utilities there is no express provision that such duties may be delegated. ■ The require-

ment in section 702 of the Utilities Code, *supra*, that the utility must do everything necessary to secure compliance with the law and rules by its agents and officers is nothing more than an additional precautionary measure to prompt the utilities with regard to compliance by those persons. It does not mean that it may evade the duty by the independent contractor device or limit the scope of its duties thereby. It does not negate the existence of a nondelegable duty. The case of *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716], while containing some dictum concerning the delegability of duties, holds that the Labor Code provisions requiring a safe place to work for employees did not apply to an independent contractor where a subcontractor's employees were concerned because the word "employer," as used in the Labor Code, was interpreted to include only the one who had employees and not contractors. Thus it is readily distinguishable from the case at bar for here there is no doubt that the duty was imposed on the defendant.

Defendant contends that the rules set forth in *Eli* v. *Murphy, supra,* 39 Cal.2d 598, and *Knell* v. *Morris, supra,* 39 Cal.2d 450, as well as other authorities heretofore cited are not in point because they involved either the duty imposed on a landlord to comply with certain laws with respect to permanent conditions on the leased property where no activity by a contractor was involved or that the activity of defendant utility here involved was merely incidental and not a part of the business authorized by its franchise, the production, transmission and sale of electricity, and that such incidental duties are delegable. If by incidental action of the independent contractor it is meant that the activity in question is not necessarily part of the duty imposed, we do not have such a situation here where the duty to install the poles in a certain manner was squarely imposed. ■ The construction and maintenance of lines, which includes poles, is a necessary part of the utility's business. It needs them to transmit electricity, the commodity in which it deals. The duty imposed expressly includes the placing of poles and states that their placement involves the safety of both the workmen and public, indicating that unless they are properly installed "considerable risk" or danger will exist. Whether we speak of the existence of a nondelegable duty as arising from defendant's franchise to do business or a special duty imposed by statute or rule or as a common law principle is not important as indicated by the above discussion. ■ If a

common law principle is involved, defendant, as the possessor of land, is answerable for the negligent failure of Wilson the independent contractor to put or maintain structures, the pole, in reasonably safe condition. (*Knell* v. *Morris, supra,* 39 Cal.2d 450, 456.)

The cases relied on by defendant are not controlling. In *Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596 [195 P.2d 501], *Scholey* v. *Steele,* 59 Cal.App.2d 402 [138 P.2d 733], *Singer* v. *Eastern Columbia, Inc.,* 72 Cal.App.2d 402 [164 P.2d 531], and *Runyon* v. *City of Los Angeles,* 40 Cal.App. 383 [180 P. 837], the court was concerned with the question of the duty of a landlord with respect to the condition of the premises, liability for the lessee's activity or the landlord's duty to repair. *Donahoo* v. *Kress House Moving Corp.,* 25 Cal.2d 237 [153 P.2d 349], merely involved the liability of an independent contractor to the tenant of a house he was moving for the landlord and which was occupied by the tenant. *Houghton* v. *Loma Prieta Lbr. Co.,* 152 Cal. 500 [93 P. 82, 14 Ann.Cas. 1159, 14 L.R.A.N.S. 913], involved the liability of the owner of land in an uninhabited area for blasting done thereon for him by an independent contractor and it was held the owner was not liable for the contractor's negligence. The court seems to imply that there must be a nuisance or absolute liability before a nondelegable duty exists, but this is contrary to the later cases. The same comment applies to *Louthan* v. *Hewes,* 138 Cal. 116 [70 P. 1065]. *Barrabee* v. *Crescenta Mut. Water Co.,* 88 Cal.App. 2d 192 [198 P.2d 558], held the independent contractor insulated the owner from liability because no duty was imposed on the owner and no peril was inherent in the work. That is not true here. Moreover, the case is of doubtful authority in view of the authorities heretofore cited, especially the case of *Knell* v. *Morris, supra,* 39 Cal.2d. 450.

Another point is made by plaintiffs. They claim that inasmuch as under section 702 of the Public Utilities Code, *supra,* defendant is required to "do everything necessary and proper" to secure compliance with the statutes and rules of the commission by its "employees" it should have been left to the jury to determine whether defendant did everything necessary and proper to secure compliance by its employees, such as its inspector, as distinguished from its independent contractor. It will be recalled that there is evidence that defendant's inspector did not inspect the installation of the pole in question and that it was not customary for him to

inspect the depth at which poles were set. The jury, plaintiffs argue, should decide whether defendant gave its inspector duties sufficiently broad to assure compliance with the rules.

Defendant contends that as a matter of law it did everything proper and necessary to secure compliance with the rules and refers to the maintenance by it of an inspector on the job; that Wilson was given detailed plans and specifications for the work; and the competency of Wilson for the job. It concedes, however, that whether everything necessary and proper was done was "a factual question for the jury."

It would seem the question should have been submitted to the jury, but defendant asserts plaintiffs' instruction, which was given, advised the jury on the subject. That instruction did not cover the subject since it told the jury that any negligence on the part of Wilson would be imputed to defendant if defendant had instructed Wilson to set the pole at less than the minimum depth. It also refers to an instruction in the language of section 702 of the Utilities Code but that instruction did not contain elements of what was meant by doing everything necessary and proper except as it appeared in section 702 and it was followed by instructions which told the jury that the duty could be delegated. Plaintiffs offered, but were refused, instructions that under the law (public utilities law) just mentioned it was defendant's duty to do everything necessary and proper to secure compliance with rule 49.1C and if it failed to do so it was negligent as a matter of law; that it was not sufficient for defendant, in that respect, to have done nothing more than enter into the contract it made with Wilson. Defendant criticizes those offered instructions as intimating that defendant did nothing toward doing everything necessary and proper other than make the contract with Wilson. The instructions do not so state or indicate.

From the foregoing it appears the judgments must be reversed for both reasons mentioned.

The judgments are reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.