[Civ. No. 17739.   First Dist., Div. Two.   Mar. 26, 1958.]

WILLIAM P. COYLE, Respondent, v. ALLAND AND COMPANY, INC. (a Corporation) et al., Appellants.

Hadsell, Murman & Bishop and Edward A. Friend for Appellants.

W. A. Lahanier and John F. Gallen for Respondent.

BRAZIL, J. pro tem.*—The plaintiff recovered a judgment in a personal injury jury case against the general contractor and against the owners of the premises upon which a motel was being constructed. The appeal by Alland and Company, Inc., the contractor, is from the judgment, and the appeal of Cabrol et al., the owners, is from the judgment and from the denial of their motion for judgment notwithstanding the verdict.

The owners in preparing to build a three-story motel, on March 1, 1954, applied to the Department of Public Works for a building permit, which permit was issued to them by the department on June 4, 1954. In the signed application, the owners agree that if a permit is issued for the construction "all the provisions of the permit and all the laws and ordinances thereto will be complied with." The first contractor hired by the owners having withdrawn from the job, they hired appellant Alland and Company, Inc., as general con-

*Assigned by Chairman of Judicial Council.

tractors to build the motel. One or the other of the owners visited the construction job almost every day, following the work rather closely during the first three months because of its slow progress and to see that the plans and specifications were being followed.

The motel consisted of 32 units in a three-story structure, and, at the time of the accident here involved, it was about 35 to 40 per cent completed. There were two balconies, designated during the trial as "A" and "B," and each had temporary flooring at this stage of the work, that in "B" being of planks and that in "A" being of plywood. The uncontradicted evidence shows that plywood is a suitable material to use as temporary flooring or decking. The plywood decking, with which we are concerned, was laid some two to four weeks before the accident. It was laid on balcony crossbeams of adequate size and strength and was placed on 4-foot centers. The plywood was new, in panels or sheets, ⅝ths of an inch thick, 4 feet wide and 8 feet long. The crossbeams were 4 feet apart, so placed that the ends of each panel rested on one and 5/16th inches of crossbeam; they were nailed to the beams but the nails were not driven completely down in order to facilitate removal.

The respondent was, and for a great many years had been, a journeyman plumber; he was an employee of Crowley and Company, the plumbing subcontractor. He went on the job for the first time on the morning of November 1, 1954, the day of the accident. On that morning he was first taken by his foreman to the second floor to have his work pointed out during which time he and the foreman walked on both balconies. He was warned about balcony "B" but not about "A," and he was shown by the foreman where the plumbers had been working the preceding Friday on "B" and told to be careful. After finding out what he was to do, the foreman told him to get his tools and caulking materials and go to work. He took the only possible route to get to his work, which was through balcony "A" and over the temporary plywood decking of the second floor. As he stepped out onto "A," the floor gave way and he fell to the ground below, sustaining injuries. The evidence shows that he had walked on this same flooring, with his foreman, twice before on that morning without incident. The flooring, he said, appeared solid as he walked on it. There was no testimony on exactly what portions of the panels he had walked on, that is, whether

over the center of the panel or near one of the crossbeams on which the panels rested.

Although nobody else saw the actual fall, and respondent does not recall seeing the plywood sheet coming down with him, there is ample circumstantial evidence to establish that what happened was: as he stepped on a plywood panel, it gave way under his weight, and both plumber and plywood fell through the resulting hole between the crossbeams. The carpenter foreman, an employee of Alland and Company, testified he had ordered two carpenters to start removing the plywood that day preparatory to the installation of permanent decking on the balcony. There was no direct testimony that the work of removal had been started. Right after the accident, a panel, which the jury could have inferred was the same one that had fallen, was put down over the opening caused by the respondent's fall. It was nailed down by one of the Alland and Company carpenters, where it remained in use for a week or two more. Examination of the plywood, before it was put back, showed there were no nails in it, nor was it shattered or broken in any way.

Over objection of appellant owners, the court admitted in evidence section 4109 of the Building Code of San Francisco as it existed at the time of the accident which was nearly two years before trial. The section, as admitted, reads:

"Temporary floors. Any building more than two stories high in course of construction shall have the joists, beams, and girders of every floor below the floor or level where work is to be done covered with flooring laid close together or with other suitable materials in order to protect workmen from falling and also to protect them from falling materials and tools. Temporary flooring shall not be removed unless and until it is replaced by the permanent flooring. It shall be the joint responsibility and the duty of the owner and the contractor to see that the provisions of this section are carried out."

The appellant owners then offered in evidence an ordinance enacted in April 1956, which repealed that portion of section 4109 which made it the duty and responsibility of the owners to see that the provisions of the section were carried out. At time of trial, the ordinance as it then existed placed that duty and responsibility on the contractor alone. Respondent's objection to the introduction of the later ordinance was sustained. There was no saving clause in this later ordinance preserving the rights of anyone who may have theretofore

been injured. The trial court instructed the jury that a violation of the ordinance as it existed at the time of the accident was negligence as a matter of law, and that the owners could not delegate the performance of their duty to an independent contractor.

The evidence establishes that the building was more than two stories high, that the two appellants were not engaged in a joint venture, that Alland and Company was an independent contractor and that Cabrol and his partners were the owners. Even though the owners may have frequently visited the premises to watch the work progress, the control of the construction procedure was with Alland and Company.

▉▉ Although appellant contractor did not at the trial object to the introduction in evidence of the original building code section, it now joins the appellant owners in maintaining that the ordinance is unconstitutional because it is in conflict with state law. They claim that the state has fully occupied the field by Labor Code, section 7101, and 8 California Administrative Code, section 1571. The Labor Code section deals directly with protective flooring during building construction and is worded substantially like the building code section, except that it makes no attempt to fix the duty or responsibility. The administrative code section, which deals with protection of openings during construction, is in more detail than either code provision, but it too omits fixing responsibility for performance.

In support of their position, appellants cite *James* v. *Myers*, 68 Cal.App.2d 23 [156 P.2d 69] and *People* v. *Villarino*, 134 Cal.App.2d Supp. 893 [286 P.2d 86]. In the Myers case the question related to the motor vehicle laws of the state. Section 458 of the Vehicle Code shows a clear legislative intent to occupy the field, wherein it provides, ''no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein.'' In the Villarino case, the ordinance involved was of a penal, prohibitory nature and was in the exact language of the state law but provided for a different penalty. In our case the city could not by ordinance have placed responsibility on the owner if the state law had expressly relieved him of it. Labor Code, section 7101, is contained in division 5 entitled ''Safety in Employment,'' part 3 ''Safety in Buildings.'' The legislative intent about occupying the field appears to be nearly the opposite of that expressed in Vehicle Code, section 458. Section 6317

of the Labor Code provides "Powers and jurisdiction of local governing bodies. Nothing in this part shall deprive the governing body of any county, city, or public corporation, board, or department, of any power or jurisdiction over or relative to any place of employment." That the field of legislation involved in this case is not fully occupied by the state is exemplified by the fact that building codes are usually adopted by the cities of California, and in most cases they are long, detailed and aimed at covering about every conceivable detail of building or construction that there is. The ordinance is not unconstitutional as being in conflict with state law.

The appellants next contend that the evidence is insufficient to support a verdict in favor of respondent for there is no showing of want of ordinary care, no negligence whatever, and furthermore respondent was in a better position than they to ascertain the presence of an obvious danger.

"[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.*, 3 Cal. 2d 427, 429 [45 P.2d 183].)

The respondent walked on the plywood on the day he was hurt, and other workmen had safely used it for more than two weeks before the accident. It cannot be said that the danger of a sheet of plywood suddenly giving away was an obvious danger to the respondent. He had just come on the job that morning, a few minutes before he fell. He had been warned to be careful about balcony "B" but nothing had been said to him about "A." At the very least, the evidence, if believed by the jury, was sufficient to support a finding that, as to him, the danger was not obvious.

While the evidence shows without contradiction that the plywood used was suitable material for temporary decking, there was no testimony to the effect that the manner in which the panels were laid on the crossbeams was a suitable method of placement. Without breaking or shattering, the sheet of plywood came loose from its bearings in one piece. It would not be unreasonable for the jury to infer that the panel was not nailed down as it should have been. Even without reference to the building code section received in evidence, appel-

lant Alland and Company as general contractors in charge of the entire job were under a duty of ordinary care to see to it that respondent had a reasonably safe place to work.

Appellants cite *Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622 [104 P.2d 26], wherein judgment for plaintiff employee who was hurt in a fall on the job was reversed upon the ground that the evidence was insufficient to hold the contractor negligent. Basically, the facts of that case and this one are very much alike in that they involved a building under construction, a building contractor, an employee of a subcontractor being hurt when he walked on a scantling placed across an open stairwell, and he fell when the scantling broke in the middle under his weight. However, from the opinion, it does not appear that there was evidence, as there is here, from which the trier of fact could draw reasonable inferences of notice and negligence. Furthermore, the Dingman case does not involve the violation of an ordinance.

The case law involving a finding of negligence from a statutory violation as set out in *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279] is as follows: "That case holds that the standard of care to which one must conform is usually that of the ordinarily prudent or reasonable person under like circumstances, but that the proper conduct of such a reasonable person under particular situations may be prescribed by statute; that an act or failure to act below a statutory standard is negligence *per se* or negligence as a matter of law; that where the evidence establishes a defendant's violation of a statute (proximately causing plaintiff's injury) and where no excuse or justification for violation is shown, responsibility may be fixed on the violator without proof of failure to use due care; that while the presumption of negligence arising from violation of an applicable statute is not conclusive and may be rebutted by showing excuse or justification, proof of the violation raised the presumption of negligence and puts upon the offender the burden of proving that the violation was excused or justified by causes or things beyond the control of the violator; that in the absence of such proof of excuse or justification the presumption of negligence is conclusive." (*Gruss* v. *Coast Transport, Inc.*, 154 Cal.App.2d 85, 88 [315 P.2d 339].)

The appellant owners have two separate grounds of appeal: (1) the trial court was in error in sustaining the objection to the introduction of the second ordinance which repealed the owner's duty and responsibility provisions of

the first one and (2) Building Code, section 4109, as to them is unconstitutional because it is unreasonable in requiring them to do something in a situation over which they had no control and of which they had no knowledge.

There can be no doubt that Alland and Company was an independent contractor hired by appellant owners to construct a motel. ██ "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished [citations]. ██ The general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work [citations]." (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 788 [285 P. 902].) The appellant owners did not select, nor did they have the privilege of selecting, the plywood material, nor the manner in which it was to be laid. They did not exercise active control over the men employed or the operation of the equipment used by Alland and Company.

██ In the first place, the action against the owners was one of tort, not contract. The fact that the owners in getting the building permit agreed to comply with all laws and ordinances applicable thereto adds nothing to what the law already requires. Compliance with the law is not based upon agreement of a citizen to comply.

The rights and duties of the appellant owners and of the respondent were materially affected by the ordinance as introduced in evidence, read to the jury and used as a basis for an instruction that a violation thereof was negligence as a matter of law. If it was error to receive the ordinance in evidence as it existed at the date of the accident, and to refuse to admit it as it existed at time of trial, the judgment must necessarily be reversed, even though respondent might have nevertheless recovered under some conceivable exception to the general rule that an owner is not liable for the negligent conduct of the independent contractor.

"The rule in such cases [purely statutory remedy] is clear that where no rights are vested the right falls and the statutory remedy ceases to exist upon the repeal of the statute without a saving clause unless the right has been converted into a final judgment prior to a repeal of the statute. Although the cause of action upon which the judgment herein is based,

accrued prior to the date of the alleged repeal, the judgment was entered subsequent to that date. The repeal of the statute without a saving clause would therefore wipe out the cause of action and render the judgment of no legal validity [citations]." (*Penziner* v. *West American Finance Co.,* 10 Cal. 2d 160, 170 [74 P.2d 252].)

This case was apparently tried on the theory that the liability, if any, of the owners was dependent upon the provisions of the ordinance, and not on any exception to the common law rule of nonliability. The court instructed the jury "that the duty of compliance with an ordinance designed for the protection of members of the public rightfully on the premises cannot be delegated by the owners of the premises to someone else, and that such owner remains liable in the absence of contributory negligence, for injury suffered by a person rightfully on the premises which proximately results from the violation, if any, of such ordinance"; and that, if the jury found the building to be more than two stories high, "the ordinance . . . previously read to you places a duty upon the defendants owners" and they "are not relieved of this duty by the fact that they employed an independent contractor to build the motel. The duty imposed by this ordinance is what the law calls a nondelegable duty and, where the owners entrust the performance of this duty to a contractor, they are responsible if the contractor fails to perform the duty and such failure proximately caused the accident."

There were no instructions offered by the plaintiff and none given by the court with reference to inherently dangerous activities, possible contractual liability because the owners signed the application for the building permit, or any other conceivable exception to the rule that an owner is not responsible for the acts and conduct of the independent contractor. There can be but little doubt that the jury based its verdict against the owners on the ordinance introduced and the instructions relating thereto.

*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409 [218 P.2d 17] and *Snyder* v. *Southern Calif. Edison Co.,* 44 Cal.2d 793 [285 P.2d 912], in each of which owners were held liable for injuries to an invitee, despite the presence of an independent contractor, do not involve a repealed ordinance or statute. There are other distinguishing features which do not now require further consideration. It is significant that respondent in this brief on appeal in commenting on the Finnegan case

makes this observation, "At common law the owner would have no liability to such invitee, but a city ordinance required certain safety devices in the building, and it was held that the owner's duty to comply with such ordinance made him liable for injuries." It was error not to allow appellant owners to show that Ordinance 4109, insofar as their duties and responsibilities were concerned, had been repealed. The ordinance as it existed at time of trial should have been received in evidence. Consequently, it was error to instruct the jury in the manner hereinbefore indicated with reference to appellant owners.

What has been said regarding the effect of the repeal of the ordinance obviates the necessity of discussing appellant owners' second contention that the ordinance as read to the jury was unconstitutional as to them.

The ordinance which was denied admission in evidence is not before this court, although it appears in the record as an exhibit for identification. In general, an appellate court does not take judicial notice of city ordinances. (*Stamper* v. *City of Los Angeles*, 80 Cal.App.2d 242, 245 [181 P.2d 687].) We have not considered whether there is or can be any exception in this case to the general rule of nonliability of an owner for acts of negligence of an independent contractor. The case was apparently tried insofar as appellant owners were concerned on liability predicated upon the provisions of the ordinance.

In affirming the order denying the motion for a judgment notwithstanding the verdict, no inference is to be drawn therefrom as to the presence or absence of any exception.

Order denying motion for judgment notwithstanding the verdict is affirmed.

Judgment for respondent against appellant Alland and Company, Inc., is affirmed.

Judgment for respondent against appellants George J. Cabrol, Albert J. Aubert and J. B. Doyle, individually and doing business as Rancho Lombard Motel is reversed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied April 25, 1958, and the petitions of appellant Alland & Co., Inc., and of respondent for a hearing by the Supreme Court were denied May 21, 1958. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.