[L. A. No. 15978.   In Bank.—December 23, 1936.]

M. P. MOLLER, INC. (a Corporation), Respondent, v. D. W. WILSON et al., Appellants.

Walter F. Haas, Stanley F. Maurseth and Gerald E. Kerrin for Appellants.

Craig & Weller and Paul A. Amos for Respondent.

THE COURT.—The plaintiff sued to recover the possession or the value of a certain Moller residence pipe organ sold to one Ferguson for the sum of $8,500 under conditional sale contract and installed in his former home in the San Fernando Valley, Los Angeles County. Since the installation of the organ the residence and lot were sold pursuant to a trust deed executed by Ferguson. Subsequently the defendants Wilson bought the residence from the purchaser under the trust deed. Ferguson had defaulted in the payments under the conditional sale contract, and had made only the down payment at the time of the sale of the residence under the trust deed. About six months after the transfer to the defendants of title to the residence property the plaintiff served a demand upon them for the possession of the organ. The demand was not complied with and this action followed. The trial court found that the organ after its installation retained its character as personal property and did not become a fixture nor a part of the realty. It found the value of the instrument to be $4,500 and rendered judgment for the plaintiff. The defendants appealed.

It is contended that the court erred in finding that the agreement for the sale of the organ was a contract of conditional sale. But the language clearly contemplated payment of the purchase price in instalments and retention of title in the seller until the purchase price was fully paid. This was sufficient upon which the trial court could base a finding of the conditional character of the agreement even though it also found that the organ was constructed to a size which would be accommodated by a certain chamber prepared for the purpose in the Ferguson house.

The contract was not recorded. It was not required to be recorded in order to protect the lien of the vendor against subsequent purchasers or encumbrancers of the realty if the instrument retained its original character as

personalty. It is not questioned that the defendants had no actual notice of the claim of the plaintiff or of the existence of the conditional sale contract at the time they purchased the residence. The only question therefore is whether the organ was real or personal property. If the former, in the absence of actual or constructive notice of the plaintiff's rights, it passed to the defendants upon the purchase of the residence. (*Dauch* v. *Ginsburg,* 214 Cal. 540 [6 Pac. (2d) 952]; *Oakland Bank of Savings* v. *California Pressed Brick Co.,* 183 Cal. 295 [191 Pac. 524]; *Peninsula Burner etc. Co.* v. *McCaw,* 116 Cal. App. 569 [3 Pac. (2d) 40].) If, on the other hand, it retained its character as personal property, the owner of the realty could pass no greater title than he had and the plaintiff may successfully assert its rights in this action. (*Oakland Bank of Savings* v. *California Pressed Brick Co., supra,* p. 297, and cases cited.)

The defendants contend that the evidence does not support the court's finding that the organ did not become a fixture. It is asserted that the proper inference from the evidence is that as between the plaintiff and a subsequent grantee of the owner of the real property without notice the organ lost its original personal nature and became a part of the realty.

Before the building was completed Ferguson ordered from the plaintiff a residence pipe organ the chest of which was to occupy a certain pit or chamber provided for the purpose in the basement. The organ was delivered and installed after the house was finished. The instrument consisted of a console, organ chest consisting of a swell and a great organ, organ pipes, and electric motor blower which propelled the wind supply to the bellows. The console stood in the living room. The organ chest, which also contained the pipes, was placed in the basement chamber. It stood on legs and was not fastened to the building in any manner. It was connected with the console by a cable of about 500 electric wires. A stairway led down from the living room to the organ chamber, and the organ chest, divided in two pieces, was taken down the stairway into the organ chamber. It was found, however, that the longest pipes, about four in number, could not be taken into the chamber by the stairway unless they were cut in two. It appeared in evidence that in installing residence organs it was customary

to cut the long pipes and fasten them together again, which could be done without sacrificing any of the tonal quality. However, Ferguson preferred to have the pipes taken through the outside wall and had a hole cut through one of the bedroom walls for that purpose, which was afterward filled in and replastered. The blower pipe was constructed by Ferguson and ran under the living room floor from the laundry room to the organ chamber. The motor blower for the wind supply was placed in the laundry room. The connection between the blower pipe and the chest was afforded by a removable flexible joint. Both the console and the organ chest, which alone weighed about 1500 pounds, were held in place by gravity. To keep the chamber sound proof, that is, impervious to vibrations initiating from the stairway, and to divide the great and the swell organ, three masonite partitions were constructed with two doors leading into the organ chamber. This was done by Ferguson's order and at his expense and was not part of the organ cost. The chest could not be removed from the chamber without taking down the sound proofing partitions. These were removed after the defendants' occupancy. The organ chest and console were removed and placed in storage and were in storage and undisposed of at the time of the trial. In the removal and at the defendants' order a hole was again cut in the bedroom at the same place as before and again repaired. There is no evidence in the record that either the installation or the removal of the organ caused any serious injury to the residence. The fact that the larger parts were preferably taken through the wall at the behest of the respective owners is a sufficient test that the injury to the realty, if any, must have been considered slight and immaterial. The removal of the sound proofing partitions, built only for that special purpose and not for any permanent use otherwise, does not appear to have caused any injury. What was used as an organ chamber now constitutes a basement room suitable for any use to which basement rooms are put, as for storage.

It appears to be a theory of the defendants that whenever personal property is placed in a building although not fastened to it, and is of such size that to remove the same necessitates the removal of some portion of the building, the statutory law and the decisions compel a conclusion

that the personal property thereby becomes a fixture. This is not an inevitable conclusion from the decided cases. Section 660 of the Civil Code defines as a fixture to land anything which is "attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws". Where a pipe organ has been installed in a church and an agreement executed that the seller should retain title until the full purchase price was paid, it has been held that as against a subsequent purchaser the organ became a part of the realty. (*Chapman* v. *Union Mutual Life Insurance Co.,* 4 Ill. App. 29; *Rogers* v. *Crowe,* 40 Mo. 91 [93 Am. Dec. 299].) The decisions in those cases rested upon the facts appearing that the structure, architectural design and embellishments of the building comprehended the organ as an integral part thereof, and that the building and organ were so far adapted to each other symmetrically and architecturally as to furnish conclusive evidence of an intention that the annexation should be permanent; that in structure, design and finish it became an essential part of the building itself and not a mere piece of furniture, and without the organ the church would not only be unfurnished, but incomplete. In cases involving a pipe organ installed in a theater as between lessor and lessee the organ was held not to be a fixture, although in one case to remove the organ required removal and replacement of some parts of the wall. (*Ballard* v. *Alaska Theater Co.,* 93 Wash. 655 [161 Pac. 478]; *Rudolph Wurlitzer Co.* v. *Cohen,* 156 Md. 368 [144 Atl. 641, 62 A. L. R. 356].)

In *Denvir* v. *Crowe,* 321 Mo. 212 [9 S. W. (2d) 957], an organ installed in a residence in a brick room built on for its receipt was regarded as a part of the building. But the court did not fully consider the question. It merely accepted the concession of the parties for the purpose of determining whether the grantee had had constructive notice of another's ownership of the organ and severance from the realty by virtue of a recorded separate transfer of the organ and an express exception thereof in recorded deeds.

The key to the defendants' position and to the holding in the last cited case is contained in the statement in 26

Corpus Juris, page 661, wherein it is pointed out that retention in place by gravity alone has in later cases been held sufficient to indicate an intention to make the article part of the realty.

We find a growing tendency in the decisions to modify the common-law test of technical affixation to the structure. In one direction the modification as noted in the text cited and as illustrated by the decision in *City of Los Angeles* v. *Klinker,* 219 Cal. 198 [25 Pac. (2d) 826, 90 A. L. R. 148], tends to include as fixtures articles such as machinery whose permanent annexation is not manifested by the use of bolts, screws and the like, but which are of such weight and nature that the mere retention in place by gravity is sufficient to give them the character of permanency and therefore affixation to the realty. In another direction, however, there is a tendency to hold that even as against a subsequent purchaser without notice articles which technically would became fixtures within the common-law rule are not such where their nature and the use for which they are intended do not indicate a permanent connection with the realty, and they can be removed without serious injury to themselves or to the realty. (*Catlin* v. *Rosenbaum Machinery Co.,* 180 Ark. 739 [22 S. W. (2d) 906] ; *Chicago Pneumatic Tool Co.* v. *Arnold,* 282 Fed. 43 ; see, also, *Anglo-American Mill Co.* v. *Community Mill Co.,* 41 Idaho, 561 [240 Pac. 446; *Breyfogle* v. *Tighe,* 58 Cal. App. 301 [208 Pac. 1008].) This divergence, however, is apparent merely and is the result of the application of what has come to be recognized as the test of whether an article becomes a fixture when physical annexation fails as a sufficient and adequate test. This court has recognized the test of intention to make the article a permanent addition to the realty as manifested by the physical facts, and has accepted the character of the annexation and the use for which the article is designed as subsidiary elements employed for the purpose of testing the intention of permanency. (*City of Los Angeles* v. *Klinker, supra; Gosliner* v. *Briones,* 187 Cal. 557 [204 Pac. 19] ; *Oakland Bank of Savings* v. *California Pressed Brick Co., supra; Lavenson* v. *Standard Soap Co.,* 80 Cal. 245 [22 Pac. 184, 13 Am. St. Rep. 147].) ▇ Thus whether an article is or was physically affixed to the building is only one of the criteria

in determining whether there was an intention to make it a permanent accession to the real property.

Annexation by weight and gravity, therefore, is not always alone a sufficient indication of an intent to make the article a permanent fixture and part of the realty. It must also appear from the nature of the chattel that if used for the purpose for which it was designed it would naturally and necessarily be annexed to and become a permanent and integral part of some realty; in other words, that it would become essential to the ordinary and convenient use of the property to which it was annexed. (*Fratt* v. *Whittier*, 54 Cal. 126 [41 Am. Rep. 251]; *Lavenson* v. *Standard Soap Co.*, *supra; Dauch* v. *Ginsburg*, *supra*, at pp. 545, 546; *Peninsula Burner etc. Co.* v. *McCaw*, *supra*, at 571; *Mangino* v. *Bonslett*, 109 Cal. App. 205 [292 Pac. 1006]; 11 R. C. L., p. 1059 et seq.) This is an obvious and necessary test derived from cases holding in some instances that articles not attached to the realty become realty, and in others that articles affixed to the realty are nevertheless personalty even as against a subsequent grantee or mortgagee when they are not essential to the ordinary and convenient use of the property and can be detached therefrom without serious injury to the freehold. (See, also, *Abramson* v. *Penn*, 156 Md. 186 [143 Atl. 795, 73 A. L. R. 742].) In such latter cases there is not created those deceitful appearances referred to in the case of *Oakland Bank of Savings* v. *California Pressed Brick Co.*, *supra*, as the foundation of the rule of permanent annexation as to subsequent grantees or mortgagees.

Whether under the circumstances of each case the property has lost its character as personalty and has become a fixture is primarily a question of fact to be determined by the evidence. (*R. Barcroft & Sons Co.* v. *Cullen*, 217 Cal. 708, 711 [20 Pac. (2d) 665].) Tested by the foregoing criteria the evidence supports the trial court's conclusion that the 'pipe organ as between the parties hereto retained its character as personal property. A pipe organ is a musical instrument, and is not an appliance, like a heating system or plumbing fixtures, which when used for the purpose for which they were intended or designed become a necessary, essential or integral part of the realty. The organ itself was not physically connected with the premises in any

permanent manner within the definition of section 660 of the Civil Code. The weight and size of a musical instrument are not alone sufficient to indicate an intent on the part of the owner to annex it permanently to the realty, even though it may be necessary to provide a space through a wall for the entry and removal of the larger sections of the instrument. This is a necessary conclusion at least where, as here, it may be said that there is sufficient evidence to support the trial court's finding inferential or otherwise, that no material injury was done to the property in installing or removing it. ■ We cannot conclusively ascribe to the fact that partitions were built around the organ chest an intent to make the organ a permanent annexation to the realty. The partitions were placed as sound proofing material and were removed without injury to the premises. The organ chamber then became a basement room and useful for any purpose as such. It also appeared that such partitions are not absolutely essential to a pipe organ. There is testimony in the record that such an organ is an instrument that is complete and playable anywhere it may be set down and connected. Nor did the removal of the blower pipe, if it was removed, materially alter or injure the residence.

■ With this record before us we are of the opinion that the court was justified in concluding that the facts of installation and removal did not indicate that the organ lost its inherent character of personal property such as any other furniture or musical instrument designed for personal enjoyment or entertainment and not as an essential, integral or necessary part of real property. In such a case we cannot say that deceitful appearances were created by the installation of the organ so as to presume an intention to make it a part of the realty.

■ We also conclude that there was no error in the failure to find that the plaintiff's action was barred by laches. Under all the circumstances of the case the court was justified in concluding that the plaintiff's demand made within a few months after the defendants received title to the realty was in conformity with the requirement of diligent action on its part.

The judgment is affirmed.