Filed 1/16/14  P. v. Santos CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINE AMY SANTOS,<br><br>    Defendant and Appellant. | H038586<br>(Santa Cruz County<br> Super. Ct. No. F22423) |

Defendant Christine Amy Santos was convicted by a jury of arson of an inhabited structure or property in violation of Penal Code section 451, subdivision (b).  She argues that the trial court prejudicially erred by excluding a prior consistent statement under Evidence Code section 791 and that there was insufficient evidence to support the conviction.  For the reasons explained below, we will affirm the judgment.

## I.  TRIAL COURT PROCEEDINGS

### A.    THE PROSECUTION'S CASE

Just before midnight on March 13, 2012, Watsonville police officer Corey Johnston arrived at 53 Union Street in response to a report of a woman screaming and the sound of breaking glass.  The two-story housing complex, approximately one block from the Watsonville police station, is near the Pajaro River in an area frequented by transients and known for drug use and gang activity.  About an hour before the dispatch, Officer Johnston had seen defendant walking nearby on Main Street with a mattress pad wrapped around her like a blanket.  She was crying.

Upon entering the building and hearing a woman yelling, Officer Johnston was directed by a resident to a bathroom near the stairs. Officer Johnston knocked on the door and announced himself as Watsonville Police Department. Defendant answered " '[y]es, sir' " but she did not open the door. Through the door Officer Johnston heard a series of clicks coming from a lighter. He knocked again and defendant again responded " '[y]es, sir.' " He asked her to come to the door and she answered " '[j]ust a moment, sir.' " After hearing more lighter clicks and smelling smoke, Officer Johnston pounded on the door demanding that the defendant open it. He continued to hear lighter clicks as defendant responded " '[y]es sir. Coming sir.' " Officer Ojeda, who also responded to the dispatch, radioed Officer Johnston from outside the building that he could see a broken window, smoke, and fire.

Officer Johnston tried to kick in the door. Defendant responded, " '[h]old on a minute, I'm coming,' " and Officer Johnson heard splashing water and hissing consistent with the sound of a fire being extinguished. After his second attempt to kick in the door, defendant opened it. Although no fire was burning at that time, Officer Johnston observed a cloud of bellowing smoke descending to about three feet above the floor.

Defendant was unsteady when Officer Johnston pulled her from the smoke-filled doorway. Later at the police station she exhibited signs of being under the influence of a depressant and possibly a stimulant. Police recovered a lighter from defendant during booking. It was operable and made the same clicking sound that Officer Johnston heard through the bathroom door.

When Officer Johnston entered the small bathroom he saw a purse, a bucket, a partially burned wrist brace, a toilet plunger head, and water on the floor. He noticed a partially burned mattress pad in the bathtub and a broken window. He also saw a wooden toilet plunger stick resting on a plastic coat/towel rack attached to the wall. A portion of the rack had melted and a melted substance was on the floor. The plunger's wooden handle was partially burned and a piece of burned cloth was tied to its end. Officer

Johnston observed "char marks, or soot marks" on the wall. When presented with photographs he had taken of the bathroom, Officer Johnston identified scorch marks on the wall, a burned baseboard with charred edges, and additional charring on the wall directly above the baseboard.

Watsonville Fire Department Captain Pablo Barreto, who also responded to the scene, identified four points of fire origin-two on the floor, one in the bathtub, and the plunger stick located on the plastic towel rack. Captain Barreto described a piece of clothing tied to the top of the stick that burned and eventually fell and continued to burn. He testified to fire damage and smoke damage on the wall above the plunger stick, and damage to the rack itself where the stick had rested. He testified to burning on the wall below the rack. He also described the baseboard as significantly burned.

Marie Sanchez, owner and property manager of the 53 Union Street complex, testified that the baseboard was destroyed in the fire and had to be replaced, and the burnt wall had to be textured and painted. Sanchez also explained that she had had frequent problems with defendant trespassing at one of her other properties, and more recently she had had problems with defendant at 53 Union Street. Sanchez had told defendant a couple of weeks before the fire that she was not allowed on the 53 Union Street premises.

## B.    DEFENDANT'S TESTIMONY

In the early evening of March 13, 2012, defendant was socializing outside a closed bar behind Sanchez's other housing complex. From there she walked across the Pajaro River to a bar where she played pool with friends. After leaving the bar she walked to a Quick Stop near the Pajaro River and bought alcoholic and non-alcoholic drinks. While at the Quick Stop she heard two men, whom she described as "gangsters," across the street at the carwash calling her name. She believed they were pursuing her because she had been chased down a couple of weeks earlier after she refused to lure her friend, Salvador, out of a bar for a beating. Salvador was beaten and stabbed that night and reported the beating to the police. After the beating and almost on a daily basis,

defendant had been harassed and followed by 11 men, 6 or 8 of them social friends with whom she had grown up. They followed her in cars, on bikes, and on foot. She feared they would beat her to the point of hospitalization.

Defendant did not alert the clerk at the Quick Stop to her fear or ask to use the clerk's phone. Instead, she left the Quick Stop and walked across the Pajaro River Bridge heading to 53 Union Street where her friends lived. As she walked she saw two men on the other side of the bridge and two men at a nearby payphone. The men allowed her to keep walking but "started moving in slow behind" her. She also saw two people in a car who were part of the same crew. She was close to a nightclub on Main Street, but felt it was not a place she could retreat to because it was too close to the two men at the pay phone.

Defendant entered 53 Union Street and knocked on three doors for help. No one answered. No one threatened her and no one followed her into the building, although the men, whom she identified by name, kept calling her name. The men could see her and were surrounding the building waiting for her. She did not go upstairs because she thought a trap may have been set for her there. Instead, she ran to the common bathroom, locked herself in, and turned off the lights. She started screaming but the men did not leave. She could see shadows; the men were outside the window saying things about her.

Believing that setting fires was the only way to get help from inside the bathroom, she panicked and lit the mattress pad on fire. After about four or five minutes she broke the bathroom window to see if she could scare the men or draw attention for help. At some point she heard the voices of her pursuers in the hallway. She lit more fires with a lighter, putting each one out with water before starting the next one. She wrapped her shirt around a plunger and burned it. She also burned a plastic bottle and a wrist brace. She was not trying to damage the building or harm anyone. She did not intend to burn the wall, nor did she recall burning the wall. But she knew she did not have permission to be in the bathroom and it was dangerous and wrong to light a fire.

At some point Officer Johnston knocked on the door but did not identify himself. Defendant spoke with him for three to five minutes without opening the door, until a back-up officer stated they were from the Watsonville Police Department. At that point defendant felt safe and opened the door. The clicking sound heard by Officer Johnston was not from defendant lighting fires. Rather, she was trying unsuccessfully to open a beer to drink before going to jail.

Although Sanchez had told defendant to stay away from her other property, she never told defendant to stay away from 53 Union Street, and defendant had no idea that Sanchez did not want her on the 53 Union Street premises.

Defendant admitted to three petty theft convictions. She also acknowledged being on probation for possession of heroin for sale. Defendant had a daily heroin habit and sold heroin. She used heroin the morning of March 13, but she did not feel the effects of heroin that evening. She testified that she had very poor eyesight; she could not tell from the witness stand during cross-examination whether the prosecutor was wearing glasses.

The jury convicted defendant of arson of an inhabited structure or property. Defendant was sentenced to the middle term of five years in prison, to be served consecutively to a one-year sentence in the probation case.

## II. DISCUSSION

A. **DEFENDANT'S PRIOR CONSISTENT STATEMENTS TO OFFICER JOHNSTON**

Evidence Code section 791, subdivision (b) provides for the admissibility of a witness's prior consistent statement if it is offered after an "implied charge has been made that [the witness's] testimony at the hearing is recently fabricated . . . and the statement was made before the . . . motive for fabrication . . . is alleged to have arisen." Even though a defendant may have multiple motives to testify untruthfully, if the evidence suggests a recent motive to fabricate, a defendant's prior consistent statement is admissible to show that that recent motive did not affect his or her testimony. (*People v. Ainsworth* (1988) 45 Cal.3d 984, 1014.)

After being escorted from the building, defendant told Officer Johnston, consistent with her testimony at trial, that she started the fires because she was being followed by men and wanted to signal for help. Shortly thereafter at the police station, defendant further explained to Officer Johnson, again consistent with her trial testimony, why she lit the fires.

Defendant argues that her statements to Officer Johnston meet the admissibility requirements of Evidence Code section 791 because the statements were made before she was exposed to a prison sentence for violating her probation. Defendant asserts that the prosecution introduced evidence suggesting she was exposed to a prison sentence for violating probation in another case based on the arson offense. According to defendant, this evidence arose after she made her statements to Officer Johnston the night she was arrested and provided a motive to fabricate her trial testimony, thus allowing her to bolster her credibility with the statements. We review the trial court's denial of defendant's request to admit her prior consistent statements for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 725; *People v. Welch* (1972) 8 Cal.3d 106, 117.)

### 1. The Issue is Properly Before This Court

Preliminarily, we address defendant's assertion that she preserved this claimed error for appellate review even though she did not identify Evidence Code section 791 to the trial court when she sought admissibility of her prior consistent statements. In his opening statement defendant's attorney told the jury that defendant "was being threatened by strange men" and "set and then put out small fires, with the hope of getting the attention of the manager or residents there." Counsel asked the jury to "keep an open mind" because defendant will "tell you the same thing she told the police twice." During a recess the court admonished counsel: "The fact that [defendant] made the same statement to the officers which you said in opening is not necessarily something that will come into evidence. She cannot testify that she gave exactly the same story to the police

officers unless and until it's challenged as a recent fabrication. [¶] . . . [¶] A prior consistent statement does not come in unless [Evidence Code section] 791 is complied with, which means there's a challenge by the DA that it is a recent fabrication, or something of that nature. So it isn't automatic."

After the prosecutor cross-examined defendant, defendant's attorney requested permission to admit defendant's conversations with Officer Johnston: "[G]iven the cross-examination by the State regarding the-obviously, there's an implied suggestion that she's fabricated this. Would it be appropriate for me to go now-with Ms. Santos, go into whether or not she talked to the police the night she was arrested and if she told them she was being followed by the men?" The court denied defendant's request, explaining: "No. I didn't hear any of that. I think there's certainly a suggestion that it's not believable. [¶] I didn't hear any suggestion that she just made this up."

In light of defendant's opening statement, the court's sidebar with counsel regarding the parameters of Evidence Code section 791, and the court's explanation for denying defendant's request, we agree with defendant (as do the People) that the trial court understood the nature of the evidence sought to be admitted and the basis for its admissibility. (*People v. Williams* (1988) 44 Cal.3d 883, 906-907 [counsel's statements sufficient to alert court to evidentiary basis for admissibility]; *People v. Scott* (1978) 21 Cal.3d 284, 290 [issue preserved when record shows court understood issue presented].) Thus, the issue was properly preserved for appeal, and we need not address defendant's alternative ineffective assistance of counsel claim.

## 2. The Trial Court's Ruling Was Not Error

Defendant's argument fails because the prosecution never suggested, either expressly or impliedly, that any motive for defendant to testify untruthfully was formed after defendant made her statements to Officer Johnston. (*People v. Hayes* (1990) 52 Cal.3d 577, 609 [admissibility hinges on motive or bias ascribed by opposing party].) On direct examination defendant testified that she was currently on probation for possession

of heroin for sale, but the revocation of defendant's probation was never broached by the prosecutor. Indeed, the prosecutor never questioned defendant regarding the status of her probation in light of the pending arson charge, much less suggested that the posture of her probation biased or motivated her testimony in any way. Even though, as noted by the trial court, the prosecutor's cross-examination may have suggested that defendant's story was unbelievable, that suggestion alone was not a basis for admitting prior consistent statements. Accordingly, the trial court did not abuse its discretion by denying defendant's request to present evidence of her statements to Officer Johnston under Evidence Code section 791.

**B.  SUFFICIENCY OF THE EVIDENCE**

We review a sufficiency of the evidence claim to determine whether substantial evidence supports the trial court's judgment of conviction. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence is "evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact would find the defendant guilty beyond a reasonable doubt." (*Ibid*.) We review the whole record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *Johnson*, *supra*, at p. 578.)

A person is guilty of arson of an inhabited structure "when he or she willfully and maliciously sets fire to or burns or causes to be burned [an inhabited structure] . . . ." (Pen. Code, § 451.) In *People v. Haggerty* (1873) 46 Cal. 354, 355 (*Haggerty*), the California Supreme Court described the burning element of arson: " 'It means to consume by fire. If the wood is blackened, but no fibers are wasted, there is no burning; yet the wood need not be in a blaze. And the burning of any part, however small, completes the offense, the same as of the whole. Thus, if the floor of the house is charred in a single place, so as to destroy any of the fibers of the wood, this is a sufficient burning in a case of arson.' [Citation]."

Defendant argues that insufficient evidence supports the arson conviction because no part of the building was burned. Specifically, defendant asserts that the prosecution did not establish that the wall or baseboard were burned, only that the wall was blackened. Defendant asserts further that the towel rack, which was admittedly burned, was not a fixture and therefore not part of the structure.

Reviewing the evidence in a light most favorable to the judgment, we reject defendant's sufficiency of the evidence claim. The record contains substantial evidence that the baseboard was burned. Officer Johnston described the baseboard as burned with charred edges. Captain Barreto also testified that the baseboard burned, and Ms. Sanchez testified that the baseboard was destroyed and needed to be replaced. Defendant's testimony that a piece of the baseboard was "broken" or "hanging out" does not negate the prosecution's evidence, particularly in light of photographs in evidence clearly showing a burned intact baseboard.

Witness testimony and photographic exhibits also provide sufficient evidence to support a finding of at least some minimal destruction of wall fibers by fire (*Haggarty*, *supra*, 46 Cal. at p. 355) and thus the burning element of arson. Officer Johnston described charring on the wall above the baseboard.[1] In his testimony, Captain Barreto distinguished between smoke damage and fire damage to the wall, noting both had occurred. We recognize Captain Barreto also testified that the fire did not "burn hot enough for it to go through the wall." But, in light of his testimony that the wall was damaged by fire, Officer Johnston's observation of char and scorch marks on the wall, and Ms. Sanchez's testimony that the burnt wall required not merely repainting but also texturizing, a reasonable jury could understand Captain Barreto's comment that the fire

---

[1] Describing a photograph admitted into evidence as Exhibit 19, Officer Johnston testified on direct examination as follows:
"Q: And can you see the charring on the wall at that point?
A: Yes. You can see where it was on fire and ballooning out."

did not "burn hot enough" to mean that the fire burned only the surface of the wall and did not burn to the wall's interior studs.

Defendant also argues that the burning of the plastic rack is insufficient evidence of arson because the rack is not a fixture. We agree and find no support in the record for a theory of arson based on the burned rack. While the evidence undisputedly shows a burned plastic rack, the prosecution argued that the defendant committed arson by causing the wall and baseboard to be burned. The prosecution did not argue that the arson was accomplished by the burning of the rack, nor was the jury asked to determine whether the rack was a fixture. (*M.P. Moller, Inc. v. Wilson* (1936) 8 Cal.2d 31, 38 [whether personal property has become a fixture is a question of fact].) Because we conclude that substantial evidence supports defendant's conviction based on defendant causing the wall and the baseboard to burn, we reject defendant's sufficiency of the evidence claim.

## III.  DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.