Filed 9/30/22  P. v. Moler CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DANIEL MOLER,<br><br>      Defendant and Appellant. | A165844<br><br>(Kern County<br>Super. Ct. No. BF171636A) |

Defendant Daniel Moler appeals a judgment entered upon a jury verdict finding him guilty of arson and making a criminal threat. He contends that the trial court failed adequately to instruct the jury on the law of arson, that the evidence does not support the criminal threat conviction, and that one of two arson enhancements must be stricken. We shall affirm the convictions. We agree with defendant, however, that only one arson enhancement under Penal Code section 451.1[1] is permissible and shall remand the matter for resentencing.

---

[1] All undesignated statutory references are to the Penal Code.

The California Supreme Court transferred this matter from the Court of Appeal for the Fifth Appellate District to the First Appellate District on August 9, 2022.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     2017 Criminal Threat

Defendant and his wife, Lanita, lived in the house they owned.[2]  In March 2017, the couple had an argument because defendant had entered the home of Lanita's daughter, taken unflattering photographs of the daughter and her home, and posted them on the Internet.  During the course of the argument, Lanita told defendant to leave, and when their paths crossed, he told her that if she made him leave "there would be hell to pay" and that "if he was going back to prison . . . he wasn't going back weak."  Lanita understood him to mean that he would go back to prison for killing her.  She feared for her life because of "[t]he tone of his voice, the look on his face," and she called her daughter and consulted with a friend, then gave a statement to law enforcement.

Defendant had previously told her he wished she would "hurry up and die," and other similar things.  He had also told her he would "burn the house down" before he let her have it.  Lanita thought that defendant had made threatening statements about 20 to 25 times in the five years preceding the 2017 incident.

### II.     2018 Arson

The couple continued to share the home after the March 2017 incident, although they slept in separate bedrooms.  They also had renters, LeeAnn and her fiancé, Anthony, who occupied two other rooms in the home.

On the evening March 13, 2018, defendant made sexual advances toward LeeAnn. While Lanita was asleep in her room and Anthony was away from the house, defendant went to LeeAnn's room, reached under her

---

[2] We will refer to some of the people involved by their first names, intending no disrespect.

arm, and touched her breast despite her efforts to rebuff him. He reached under her leg in an effort to touch her buttocks, but she pushed his hand away, and he exposed his genitals and offered her money to touch them.

The next morning, LeeAnn told Lanita that defendant kept going into her room and making sexual advances. LeeAnn was crying, and she was frightened because she had nowhere else to go. Lanita told defendant to pack his bags and said that if he were not gone by the time she returned from work, "the police would be involved." He "yell[ed], scream[ed], [and] [c]ussed" in response, telling her, "You don't want to do this. You can't make it without me."

Lanita went to her workplace, which was next door to their house. While she was there, defendant went to her workplace and asked her if she really wanted to "do this." She said she never wanted to see him again, then shut the door. Defendant got into his truck and left. He appeared to be under the influence of alcohol and possibly methamphetamine.

Lanita went outside and sat on the steps of her client's home. She heard a hissing sound and smelled a chemical smell similar to lighter fluid, then saw smoke billowing from defendant's bedroom. She called 911 and told LeeAnn, who had locked herself in her bedroom to avoid defendant, to leave the house.

A firefighter who responded saw smoke, but not flames, coming from the house. Defendant's bed was on fire, and there was a bottle of a flammable agent on the carpet below the bed. The fire was extinguished within two minutes.

An arson investigator later saw smoke and soot on the door frame, ceiling, and walls, a "significant burn area" on the bed and carpet, and, on the floor near the bed, a container of charcoal lighter fluid with its lid removed.

3

The investigator saw that the floors of the living room, the hallway that led to Lanita and defendant's bedrooms, and defendant's bedroom were all covered with wall-to-wall carpet. The carpet was placed on top of padding and was affixed to the floor, attached with a tack strip with baseboard above it.

A week before the fire, defendant had told Lanita that if she ever made him leave, he would burn "this place" down with her in it.

Testifying in his own defense, defendant did not deny he set the fire but said he did so accidentally, under the influence of alcohol and methamphetamine that he had spent the night consuming, while trying to fill his lighter with fluid so he could smoke more methamphetamine. He said he had "flirted" with LeeAnn the previous evening, but he denied making sexual advances or grabbing her breasts or buttocks. He denied that he had ever threatened to kill or harm Lanita.

The jury found defendant guilty of felony arson of an inhabited structure or property (§ 451, subd. (b); count 1), with an enhancement that he used an accelerant (§ 451.1, subd. (a)(5)); misdemeanor sexual battery (§ 243.4, subd. (e)(1); count 2); and misdemeanor criminal threats (§ 422; count 3). The trial court found true allegations that defendant had suffered one prior conviction for arson (§ 451.1, subd. (a)(1)) and three prior strikes and serious felonies (§§ 667, subd. (a), 667, subds. (c)–(j); 1170.12, subds. (a)–(e)).

Noting that defendant had three strike priors, the trial court sentenced him to 25 years to life for count 1, with two additional three-year enhancements for the prior arson conviction (§ 451.1, subds. (a)(1) & (a)(5)). It imposed a concurrent 180-day sentence for count 2 and a concurrent one-year sentence for count 3.

4

## III. Instruction on Arson

Defendant contends the trial court failed to instruct the jury fully on the law of arson. The evidence shows that the defendant's bed and the wall-to-wall carpet in his bedroom were partially burned. Defendant argues the jury should have been instructed on how to determine whether the carpet was a fixture, and hence part of the structure, or whether it was mere personal property, the burning of which would not support an arson conviction.

Arson is committed when a person " 'willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property.' (§ 451.)" (*In re V.V.* (2011) 51 Cal.4th 1020, 1027.) The " 'burn[ing]' " requirement is satisfied if any part of the structure is " 'consume[d] by fire' "; blackening is insufficient to meet this standard if " ' "no fibers are wasted." ' " (*In re Jesse L.* (1990) 221 Cal.App.3d 161, 166 (*Jesse L.*), citing *People v. Haggerty* (1873) 46 Cal. 354, 355.) The burning of any part of a structure, however small, completes the offense. (*Jesse L.*, at p. 166.)

For these purposes, a "structure" includes a fixture, that is, "a thing, originally personal property, but later affixed or annexed to realty, so that it is considered real property." (*Jesse L.*, *supra*, 221 Cal.App.3d at p. 167, citing Civ. Code, § 660.) A fixture "becomes an integral part of the structure," so that its " charring or destruction by fire is all that is required to constitute a burning sufficient to support a conviction of arson. . . ." (*Jesse L.*, at p. 168.) Applying this rule, the court in *Jesse L.* concluded that damage to light fixtures constituted evidence of arson. (*Ibid.*) The court in *People v. Lee* (1994) 24 Cal.App.4th 1773, 1778 (*Lee*) concluded similarly for wall-to-wall carpeting.

5

The defendant in *Lee* was convicted of arson of an inhabited structure and contended on appeal the evidence was insufficient to support the conviction. (*Lee, supra*, 24 Cal.App.4th at pp. 1775–1776.) The appellate court rejected the contention, noting that the jury was instructed not only on the burning requirement for arson, but also on the definition of fixtures used in *In re Jesse L.*, and that it had the option to find the lesser offense of attempted arson of an inhabited structure. (*Lee, supra*, 24 Cal.App.4th at p. 1778.) The court concluded that on the evidence, the jury could reasonably find the carpet was "a fixture, i.e., originally personal property which was affixed to the real property so securely and permanently it became an integral part of the structure." (*Ibid*.) A fire inspector had testified the carpet was wall-to-wall carpeting installed throughout the house. (*Ibid*.) And, the court went on, "Wall-to-wall carpeting is often attached to the floor by using wood strips with tacks, nails or screws. In some instances the carpeting is additionally affixed to the floor with glue. Moreover, wall-to-wall carpeting is customized for a particular place and cut to fit only that area. When 'used for the purpose for which it was designed' the carpet could become a permanent and integral part of the realty. [Citation.] Thus, like wallpaper, or other securely fastened and customized personal property, wall-to-wall carpeting often becomes an integral part of the structure." (*Ibid*.)

In reaching this conclusion, the *Lee* court looked for guidance to a series of civil cases addressing claims that an item was a fixture that passed with the sale of the real property. (*Lee, supra*, 24 Cal.App.4that pp. 1777–1778.) Whether property has "lost its character as personalty and has become a fixture is primarily a question of fact to be determined by the evidence." (*M.P. Moller, Inc. v. Wilson* (1936) 8 Cal.2d 31, 38; compare *Larkin v. Cowert* (1968) 263 Cal.App.2d 27, 30–31 [drapes and wall-to-wall carpeting were

6

integral to structure because they were necessary to attract tenants]; with *Plough v. Petersen* (1956) 140 Cal.App.2d 595, 596–597 [wall-to-wall carpeting not a fixture where it was purchased on conditional sales contract, mortgaged separately from the home, and specially installed to make it easily removable]; see also *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.* (1966) 247 Cal.App.2d 131,131–132 [evidence that carpeting was designed so it could easily be interchanged between rooms in apartment and between apartments supported conclusion it was not fixed part of structure].)

The jury in this case before us received the standard instruction on the law of arson of an inhabited structure, including the requirement that the fire must burn an inhabited structure or property, and that "[t]o set fire to or burn means to damage or destroy with fire either all or part of something, no matter how small the part." But it was not instructed under *Jesse L.* or *Lee* about the meaning of a fixture, that is, how to determine whether the carpet was part of the structure.

While the parties and the trial court were discussing the jury instructions, the court noted that there had been a discussion of instructing the jury with the lesser included offense of attempted arson on the theory that burning the carpet might not be sufficient to constitute burning of the structure. The court went on, "I believe that the parties have agreed that the real focus in the case is on the defendant's level of intoxication and intent at the time as opposed to the issue of whether a structure was burned. I tend to agree with that because the law is fairly clear that wall-to-wall carpeting is part of a structure and cannot be removed. . . . [¶] The evidence clearly establishes it was wall-to-wall carpeting based upon the testimony of the arson investigator as well as the several photographs that were introduced that showed uniform wall-to-wall carpeting throughout the various rooms of

7

the house that were shown." The court suggested the jury should not be put in the position of "dealing with this [arcane] issue of whether carpet is structure or not." Defendant stipulated that the instruction on attempted arson need not be given and that he would not argue that he damaged only his own personal property rather than the structure.

Defendant now contends the trial court erred in not instructing the jury on the meaning of the term "fixture," and in doing so deprived him of his constitutional right to have the jury decide all elements of the crime, requiring reversal unless harmless beyond a reasonable doubt. (See *People v. Flood* (1998) 18 Cal.4th 470, 481–482, 491–492, 502–503.) Even in the absence of a request, a trial court must instruct the jury on " 'the general principles of law relevant to and governing the case' " (*People v. Rubalcava* (2000) 23 Cal.4th 322, 333–334), that is, " 'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " (*People v. Smith* (2013) 57 Cal.4th 232, 239.) However, when defense counsel makes a " ' "conscious, deliberate tactical choice" to forego a particular instruction, the invited error doctrine bars an argument on appeal that the instruction was omitted in error.' " (*People v. Chaney* (2005) 131 Cal.App.4th 253, 256, fn. 5; accord, *People v. Souza* (2012) 54 Cal.4th 90, 114 [invited error found only if counsel expresses deliberate tactical purpose in resisting instruction].)

The Attorney General argues the doctrine of invited error bars defendant from claiming instructional error on appeal. This is a close question, but we conclude that, on this record, any error in the failure to instruct on the meaning of "fixture" was invited. Defense counsel was clearly aware of the legal issue; before trial, citing *Lee* and *Jesse L.*, defendant moved to set aside count 1 in part on the ground the damage to the carpet and bed

8

did not constitute burning a structure. While discussing whether to include an instruction on attempted arson, the trial court noted that the parties had agreed the focus was not on whether a structure was burned, and, without challenging the court's reasoning, defendant stipulated that no attempted arson instruction need be given, later adding that this meant he would not argue the carpet was mere personal property. It thus appears that defendant, or his counsel, recognized it would be futile to try to persuade the jury the carpet was not a fixture and made a deliberate tactical choice to stake his defense, and his credibility, solely on his position that the fire was accidental. (See *People v. Souza*, *supra*, 54 Cal.4th at p. 114.)

A second ground for forfeiture is found in the general rule that "the failure to request clarification of an instruction that is otherwise a correct statement of law forfeits an appellate claim of error based upon the instruction given." (*People v. Rundle* (2008) 43 Cal.4th 76, 151 [defendant forfeited challenge that rape instruction did not clearly explain meaning of term (" 'sexual intercourse' ") used in statute], disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; accord, *People v. Lee* (2011) 51 Cal.4th 620, 638 ["[i]f defendant believed the instruction on consent required elaboration or clarification, he was obliged to request such elaboration or clarification in the trial court"].) Only where a term used in an instruction has " 'a technical meaning peculiar to the law or an area of law,' " does the court have a duty to give amplifying or clarifying instructions. (*People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1351 (*Chaffin*).) Defendant does not claim the arson instruction the jury heard was erroneous and, like the term " 'sexual intercourse' " in *Rundle*, the term "structure" does not have a technical meaning that required clarification in this case. While appellant could have requested a more fulsome definition of "structure," as was

9

provided the jury in *Lee*, we see no reason the common-sense definition is not fully sufficient here.

But in any event, we see no possibility of prejudice. Had the jury been instructed on the meaning of the term "fixture," on this record it would undoubtedly have concluded that the wall-to-wall carpeting in the bedroom was part of the structure. The carpeting covered the living room, hallway, and bedroom; it was fitted to the home in a manner indicating an intent that it remain there permanently; and it was laid over padding, attached at the wall with a tack strip, and with baseboard above it. There is nothing to suggest the carpet was easily removable or not intended to remain part of the structure. (Cf. *Plough v. Petersen*, *supra*, 140 Cal.App.2d at pp. 596–597 [rugs were easily removable, bought on conditional contract and still being paid off, and had mortgage recorded on them].) While the existence of a fixture is a question of fact (see *M.P. Moller, Inc. v. Wilson*, *supra*, 8 Cal.2d at p. 38), we see no possibility that, with further instruction, a reasonable jury could have concluded this wall-to-wall carpet was not a fixture.,

## IV.   Criminal Threats

The conviction for making criminal threats (§ 422; count 3) was based on defendant telling Lanita that if she made him leave "there would be hell to pay" and he wasn't going back to prison "weak." Defendant contends there is no substantial evidence that his statements were criminal threats for purposes of section 422. In considering a challenge to the sufficiency of the evidence, we review the record " ' "in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v.*

*Wilson* (2008) 44 Cal.4th 758, 806; accord, *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.)

Section 422 is violated when a person "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422, subd. (a).) Defendant contends his statements did not meet these standards because they were vague and ambiguous, did not show a deliberate purpose, and lacked immediacy.

In determining whether "conditional, vague, or ambiguous language" can support a conviction for criminal threats, courts have looked to all of the surrounding circumstances, including "the defendant's mannerisms, affect, and actions involved in making the threat," and the defendant's subsequent actions. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.)

In *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1217–1218 (*Martinez*), a case with parallels to that before us, a defendant contended a threat did not convey a threat of great bodily injury or death. The defendant was talking with his girlfriend at her workplace, and her supervisor asked him to leave. Defendant got " 'right in [the supervisor's] face,' " yelled and cussed at him, and told him, " 'I'm going to get you' " and " 'I'll get back to you. I'll get you,' " before leaving. (*Id*. at pp. 1214–1215.) Early the next morning, around the time the supervisor began work, defendant started a fire

at the workplace. (*Id*. at p. 1215.) The appellate court concluded the evidence supported the criminal threat conviction. Although the defendant's words, standing alone, might not convey a threat to commit a crime that would result in death or great bodily injury, the surrounding circumstances filled the gap: he yelled and cursed at the supervisor, he got close to him, he displayed angry behavior, and he subsequently set a fire at a time it could be inferred he knew the victim reported to work. (*Id*. at pp. 1218, 1220–1221.) Thus, the appellate court explained, the "defendant's threat to get back at [the supervisor] may have been meant as a threat to burn down the shop where [he] was located, *clearly a crime which could result in death or great bodily injury*." (*Id*. at p. 1221, italics added.)

The parties' history may also be relevant to whether a threat satisfies the requirements of section 422. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) The defendant in *Mendoza* was a member of the Happy Town criminal street gang. The victim testified against the defendant's brother, who had been charged with murder, and defendant told the victim she had " 'fucked up [defendant's] brother's testimony' " and that " '[h]e was going to talk to some guys from Happy Town.' " (*Id*. at p. 1337.) She became frightened and thought the defendant's words meant gang members would kill her. (*Id*. at p. 1338.) The Court of Appeal concluded substantial evidence supported the conviction for making a criminal threat. Although the words themselves did not articulate a threat to commit a specific act resulting in death or great bodily injury, the surrounding circumstances supported a finding that defendant's words presented a serious danger of death or great bodily injury. Those circumstances included the facts that the defendant and the victim had known each other for years, that both of them and defendant's brother were associated with the Happy Town gang, that the victim had

12

given damaging testimony, and that she became fearful for her life, suggesting she knew Happy Town gang members would retaliate against her. (*Id*. at p. 1341.)

Defendant's words here—that there would be "hell to pay" if Lanita made him leave and that "he wasn't going back to prison weak"—are, taken in isolation, ambiguous. But the surrounding circumstances, like those in *Martinez* and *Mendoza*, fill in the gaps. Before the March 5, 2017, incident defendant had threatened multiple times to burn the house down—an act that can result in death or great bodily injury (see *Martinez, supra*, 53 Cal.App.4th at p. 1221)—and he had expressed a wish for Lanita's death. On the day of the threat, Lanita was telling defendant to leave the home. She was frightened by his words along with "[t]he tone of voice, the look on his face," and thought he was going to kill her. And, she testified, she was frightened enough that she went to a friend's house to ask for advice and she gave a statement to law enforcement. From this evidence, a reasonable jury could conclude defendant's statements, under all the circumstances, were not too vague to convey an unequivocal threat, with "gravity of purpose," to commit a crime that would result in Lanita's death or great bodily injury. (§ 422, subd. (a).)

We are not persuaded otherwise by defendant's reliance on *In re George T.* (2004) 33 Cal.4th 620 or *In re Ricky T., supra*, 87 Cal.App.4th 1132, both of which concluded the evidence did not support a finding that a minor had made a criminal threat. In each of those cases, the minor made an ambiguous statement—in *George T.*, showing classmates a poem containing the lines, "I can be the next kid to bring guns to kill students at school. So parents watch your children cuz I'm BACK!!," and in *In re Ricky T.* telling a teacher he was going to " 'get' " him or " 'kick [his] ass.' " (*George T.*, at

13

p. 624; *In re Ricky T.*, at pp. 1135–1136.) But in neither case were there surrounding circumstances or subsequent events, such as a history of animosity or conflict, threatening gestures or mannerisms, or, in the case of *Ricky T.*, sustained fear, to clarify the ambiguity or indicate the statements were an immediate threat. (*George T.*, at pp. 636–639; *In re Ricky T.*, at pp. 1138–1139, 1140–1141.) In the case before us, on the other hand, there was a history of conflict between defendant and Lanita, defendant had threatened her repeatedly in the past, including threats to burn the house, and because of her fear she reported his threat to a friend and to law enforcement. The evidence is sufficient to support a conclusion that defendant made a criminal threat for purposes of section 422.

## V. Enhancements Under Section 451.1

Defendant's final contention is that the trial court erred in imposing two arson enhancements. Section 451.1, subdivision (a), provides that a person who is convicted of a violation of section 451, as defendant was, shall receive an additional three-, four-, or five-year enhancement "if one or more of" several enumerated circumstances are found true, among them that the defendant has previously been convicted of felony arson (§ 451.1, subd. (a)(1), citing § 451) and that the defendant used a device designed to accelerate the fire (§ 451.1, subd. (a)(5)). The jury found defendant used an accelerant in the commission of arson, and the trial court found he had suffered a prior arson conviction. In sentencing defendant, the trial court imposed two consecutive three-year enhancements under section 451.1.

Defendant contends, and the Attorney General properly concedes, that section 451.1 authorizes only one enhancement, even if more than one of the enumerated circumstances is found true. (*People v. Shiga* (2019) 34 Cal.App.5th 466, 470.) Defendant asks us to strike one of the three-year

14

enhancements.  Rather than doing so, because the trial court had discretion to select an enhancement term of up to five years, we shall remand the matter for the court to exercise its sentencing discretion under the correct legal standards.

## DISPOSITION

Defendant's convictions are affirmed, but the matter is remanded for the trial court to exercise its sentencing discretion in a manner consistent with the views expressed in this opinion.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*People v. Moler* (A165844)